WOLF *v*. STATE.

Opinion delivered February 27, 1922.

1. CRIMINAL LAW—HARMLESS ERROR—EVIDENCE.—In a prosecution for maintaining a nuisance by operating a resort for betting on horse races, testimony of a witness that another witness went with him to the alleged resort and looked in a booth where somebody had taken bets, and said, "He went through the floor," such testimony, while not competent as part of *res gestae*, was not prejudicial where the other witness testified to the same effect concerning what he did during the visit to the resort.

2. GAMING—EVIDENCE.—Where defendants were charged with maintaining a gambling resort, testimony tending to prove that they kept accounts in banks under assumed names was competent in determining whether defendants were conducting a legitimate business.

3.  GAMING—EVIDENCE.—On a charge for maintaining a resort for betting on horse races, it was competent to prove by the manager of a telegraph office that the tlegraph companies were receiving horse race messages.

4.  CRIMINAL LAW—HARMLESS ERROR—EVIDENCE.—Evidence which had no probative force against the defendants could not have prejudiced them.

5.  CRIMINAL LAW—INSTRUCTION.—In a prosecution against two defendants, it was not error to refuse an instruction which might justify the inference that the jury would have to return a verdict finding both defendants guilty or both not guilty.

6.  CRIMINAL LAW—INSTRUCTION.—The omission in an instruction to tell the jury that, in considering the circumstances of aggravation or mitigation, they must be guided by the evidence, was not error where, taken in connection with the other instructions, it was manifest that the jury was not authorized to consider any facts or circumstances not shown by the evidence.

7.  CRIMINAL LAW—INSTRUCTION—JUST AND FAIR PUNISHMENT.—An instruction that the jury should fix a punishment that would be "just and fair" was tantamount to telling the jury that it was not proper to go beyond the evidence to increase or aggravate the punishment.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*A. J. Murphy* and *Geo. P. Whittington,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *William T. Hammock,* Assistants, for appellee.

WOOD, J.   On the 17th of November, 1921, appellants were tried and convicted on the charge of maintaining a common nuisance by operating a place in the city of Hot Springs, Garland County, Arkansas, known as the Blumensteil & Wolf cigar store for the purpose of permitting and encouraging divers and ill-disposed persons to resort thereto for the purpose of betting on various horse races run outside of the State of Arkansas. This is a second appeal from convictions on the indictment against appellants. See *Blumensteil* v. *State,* 148 Ark. 421.

M. A. Eisele testified that he was a city commissioner of the city of Hot Springs between January 1 and De-

cember 1, 1920; that he went to the Blumensteil & Wolf cigar store on one occasion with some of the other commissioners; that they went through the store and into the back room.   There was an immense crowd congregated there, and as the commissioners went in, the crowd ran out through the front, back and side doors and every other way.   There didn't seem to be any kind of furniture there except a booth, apparently a window screened off, where somebody had taken bets, and Mr. Belding, the city manager, went and looked in there and laughed and said, "He went through the floor".   The appellant objected to that part of the statement of the above witness "that Belding went and looked in there and laughed and said 'He went through the floor.'"   The objection was overruled, to which ruling appellants duly excepted.

Appellants contend that the above ruling of the court is error for which the judgment should be reversed. After this testimony was given by Eisele, he further testified that "Belding picked up some cards off of the floor and said, 'I want you gentlemen to see this.'   Then he pulled a card off the wall with apparently some betting odds or the names of horses, or something.  He said he would use it."  There was no objection to this latter statement by the witness.   The witness further testified that he thought there were about fifty people in the back room at the time the commissioners got there.  This all occurred in the spring of 1920 in the city of Hot Springs, Garland County, Arkansas.

Belding testified that he was city manager of the city of Hot Springs and visited the Blumensteil & Wolf cigar store on the occasion mentioned by witness Eisele and the other commissioners, who accompanied him. The visit had reference to the suppression of book-making. He found there a crowd gathered in the back room of the store.  Witness took a card off of the side of the wall pinned up there with horses' names on it and found a crowd of people assembled, and they all made a mad rush

for the doors and got out of there.    When witness went in, he "saw a cupboard or a door fall down and somebody in there—didn't know who it was or where he went.    He just disappeared suddenly."    Witness saw the shape of a man, but it was all done so quickly he couldn't tell who it was.

The testimony of the witness Eisele, to which objection was made, was not a part of the *res gestae,* as the trial court seemed to think, but nevertheless there was no prejudicial error to appellants in admitting the testimony, because witnesses Eisele and Belding testified further without objection to the effect that the man standing behind the window in the booth in the back room in the cigar store suddenly disappeared—went through a trapdoor in the floor.    In other words, there could be no prejudice to the appellants in not excluding the testimony of Eisele as to what Belding said and did, because Belding, who was a competent witness, testified fully to the same effect concerning what he did during this visit to the cigar store, and his testimony was relevant to the charge against the appellants.

Witness Stanley Lee testified that he was cashier of the Como Trust Company in the city of Hot Springs. He was acquainted with the appellants.    Appellant Wolf had one account at witness' bank which was carried in his name and interest in three or four accounts. He had one in the name of "Blumensteil & Wolf," one in the name of "Princess Theatre," and one in the name of "Zero & Company".    Witness testified that the account in the name of "Zero & Company" was placed in his bank in the fall of 1919 or spring of 1920; that checks were drawn on that account signed "Zero & Company, by Wolf."

Witness Robert Neal, the vice president of the Arkansas National Bank of Hot Springs, testified that during the year 1920 there were accounts on the books of the bank in the names of Blumensteil & Wolf and Zero & Company; that the accounts were opened up as early

as 1918 and were closed in 1921.    The Zero Company never had a balance in excess of $10,000 at any one time, and that much only for a very short time.    At one time there was on deposit the sum of $5,000.    The account of the Zero Company was opened up by John C. Wolf. No check, so far as witness knew, was ever signed by any one except him.    The checks were made payable to ''Cash''. .  Both the appellants also carried personal accounts in the bank.    The appellants duly objected to the testimony of the above witness relative to the accounts other than the personal accounts of the appellants.

Several witnesses testified on behalf of the State to the effect that during the year 1920 they had made bets on horse races in the back room of the Blumensteil & Wolf cigar store; some of them had made bets with the appellants, and some of them had seen the appellants make bets there with others, and some of them had made bets over the telephone with the appellants, recognizing their voices.    One witness testified that during the year 1920 he had bet about five or ten times with the appellants, most of it in December, 1920.    There was testimony tending to show that when the parties making bets with the appellant won, the bets were paid by the appellants in cash.    The testimony as to the names under which appellants were carrying their bank accounts in the city of Hot Springs was revelant.    The testimony for the State tended to prove the allegations of the complaint that the appellants were conducting a place for the purpose of permitting certain persons to resort   thereto and to bet on horse races outside of the State, and the number of the accounts and the different names under which these accounts were carried were circumstances for the jury to consider in connection with the other testimony in determining whether the appellants were conducting a legitimate business in the city of Hot Springs at the place designated in the indictment.

One witness, Nobles, testified on behalf of the State that he was manager of the telegraph office of the West-

ern Union Telegraph Company in the city of Hot Springs, and during the early part of 1920 handled messages for the appellants concerning horse races. He was asked this question: "Do you know anything about the extent of your messages or have you had any contract or relations with the defendants herein with reference to that sort of business?" The witness answered: "Not since the first of the year, but last year, I believe that they were receiving messages over the Postal—race messages." Counsel for appellants thereupon objected "to anything the witness may believe". The court thereupon ruled that the witness could not testify to what he believed unless his belief was based upon what he had heard the defendants say. The witness thereupon testified that he knew the telegraph companies were receiving messages for the appellants. Witness, representing the Western Union, said, "I made a call on the appellants for their busines, and they gave us a trial in 1920. When New Orleans opened up, we handled some of their business."

There is no error in the ruling of the court in allowing the above testimony to go to the jury.

Witness Ledgerwood, police judge of the city of Hot Springs, was called as a witness for the State, and asked the following question: "During the month of December, 1920, were there any convictions before your court of either of the defendants herein for betting on the handbooks?" Counsel for the appellants objected on the ground that the records were the best evidence. The prosecuting attorney thereupon stated that he thought counsel for the appellants were not going to require him to bring the records. Thereupon counsel for appellants stated as follows: "He can testify concerning the convictions what his records show, but we don't want him to go any further. We waive the records." The witness was then asked whether the defendants or either of them were convicted for book-making, betting on the horse races, and answered, "I don't re-

call whether they were or not." Manifestly, there was no error prejudicial to the appellants in the ruling of the court upon the above assignment. The testimony of the witness, to which objection was made, was without any probative force whatever against the appellants, and they are not in an attitude to complain of the manner in which the testimony was elicited.

The appellants next contend that the court erred in refusing to give their prayer for instruction as follows: "You are instructed that, if you find the defendants guilty, you shall fix their punishment at a fine of not more than one hundred dollars or imprisonment in the county jail for a period of not more than ninety days, or both such fine and imprisonment." And in giving to the jury on its own motion the following instruction: "If the defendants, or either of them, are found guilty, the jury will fix a punishment which, in the sound judgment of the jury, is a just and fair punishment for the offense committed, if any, taking into consideration all of the circumstances that may tend to show aggravation or mitigation of the offense, if any has been committed."

The court did not err in refusing appellants' prayer for instruction nor in giving the instruction on its own motion. It was within the province of the jury to determine under the evidence whether one or both the appellants were guilty or innocent of the crime charged. The appellants' prayer for instruction did not make this plain to the jury, but rather left the inference that the jury would have to return a verdict finding both the appellants guilty or both not guilty. It failed to instruct them that they were at liberty, under the indictment and the testimony, if they found only one of the appellants guilty and the other innocent, to so find, or, if they found both guilty, or both innocent, to so find. The first part of instruction No. 8 covered the same subject-matter as to the punishment, in case of a verdict of guilty, as appellants' prayer for instruction, and correctly informed the jury of its province to re-

turn a verdict of guilty against one or both of the appellants if they so found. The instruction as to the punishment for the crime charged correctly declared the law as announced by this court on the former appeal. The specific objection to the latter portion of the instruction to the effect that it omitted to tell the jury that, in considering the circumstances of aggravation or mitigation, they must be guided by the evidence, we conclude is not tenable for the reason that, when taken in connection with all the instructions given to the jury, it is manifest that the jury was not authorized to consider any facts or circumstances that were not shown by the evidence in determining the guilt or innocence of the appellants or in assessing their punishment in the event of a verdict of guilty.

The jury was told in the instruction that if they found the appellants guilty they would fix the punishment that would be "just and fair." This of itself was tantamount to telling the jury that it was not proper to go beyond the evidence, which they were sworn to consider, in order to increase or aggravate the punishment of the appellants. For, it would be obviously unjust and unfair to violate their oaths by considering any facts or circumstances not in evidence in order to aggravate the punishment of appellants. The law applicable to the facts developed at the trial was fully and correctly declared. The instructions certainly were as favorable to the appellants as the facts in evidence would warrant, and as they were entitled to ask. There was testimony to sustain the verdict. The appellants have had a fair trial. The judgments are therefore affirmed.