Robert C. WRIGHT and John M.
SOUTHERLAND *v.* STATE of Arkansas

CR 75-87                    528 S.W. 2d 905

Opinion delivered October 20, 1975
[Rehearing denied November 24, 1975.]

*Harold Hall,* Public Defender, by: *Michael Castleman,* Dep. Public Defender, for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Lewis G. Smith,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Robert C. Wright and John M. Southerland, appellants herein, were convicted of the crime of robbery, and their punishment fixed by the jury at 12 years each confinement in the Arkansas Department of Correction. For reversal, three alleged errors are relied upon which we proceed to discuss, though not in the order listed.

## I.

### "THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF ROBERT WRIGHT."

The background of this prosecution concerns the robbery of John's Liquor Store around 9:00 P.M. on September 20, 1974, in Little Rock. Harvey Hall, attendant at the liquor store, testified that three white males came into the store and one struck him with a bottle of whiskey. Fighting back, Hall also struck one of the robbers in the face with a bottle. After being struck twice more, Hall fell to the floor, a pistol, which was on his person, falling to the floor beside him. The men took approximately $100.00 from the

store. Hall started firing and the robbers ran from the store. After emptying one pistol, he fired another and was of the opinion that he had struck one of the participants. A prospective customer, Perry Middlebrook, had just driven up in front of the liquor store and he observed three white males run from the establishment. The first two ran toward a blue Falcon automobile and got into it; the third then fled from the store, appeared to be staggering, but also ran to the Falcon and was helped in. This third man left a trail of blood to the car. The police were called and the blue Falcon, occupied by a driver and one passenger, was later stopped by officers and the occupants arrested. These two were appellant Robert Wright, and Ivan Tabb.[1] Wright was the driver and Tabb a passenger in the front seat.. The officers observed a considerable amount of blood in and on the car, apparently coming from a wound on Tabb's nose. There was no blood on Wright. Both men "reeked" of alcohol. Upon searching Wright, the officers found 37 one dollar bills, 11 five dollar bills and a roll of dimes, totaling $102.00. According to Hall, $90.00 to $100.00 had been taken in the robbery, specifically, about $35.00 to $40.00 in one dollar bills, about $40.00 to $50.00 in five dollar bills and· a roll of dimes.[2] At an in-custody lineup, Hall and Middlebrook could not identify Wright, and Middlebrook picked out a third person who had no connection with the robbery.[3] On trial, Hall was still unable to make an identification, but Middlebrook identified Wright as one of the robbers. Appellant says that the evidence was insufficient to sustain the conviction, and this assertion is apparently principally based upon the failure of Hall to make an identification and the failure of Middlebrook to make such an identification before trial.

We do not agree that the evidence· was insufficient to sustain the conviction. Wright was arrested within twenty minutes after the robbery occurred about two miles from the scene, driving a blue Falcon which had been described almost precisely by Middlebrook as the car in which the robbers had

---

[1]Tabb subsequently entered a plea of guilty.

[2]Hall stated that he had placed this money in the register shortly before the robbers came into the store.

[3]Middlebrook stated: "I picked out somebody else similar to him."

left the scene.[4] The passenger was bleeding from his nose which certainly conformed to the statement of Hall that he had struck one of the men in the face with a bottle and also to the evidence of Middlebrook, which was that the last man who entered the Falcon on the passenger side was bleeding. The money found on Wright was substantially the amount that Hall described as taken from the store, including the fives and ones, and even to the roll of dimes found on that appellant, the roll which contained the dimes being the type, according to Hall, used in the store. No witness was offered to explain the source of the money, or the cause of the blood. Of course, the weight of the in-court identification by Middlebrook was a matter for the jury to pass upon, but entirely aside from that, the other evidence was substantial, and sufficient to sustain the conviction. *Murphy* v. *State,* 248 Ark. 794, 454 S.W. 2d 302.

## II.

### "THE COURT ERRED IN PERMITTING THE IN-COURT IDENTIFICATION BY THE PROSECUTING WITNESS OF THE DEFENDANT, JOHN M. SOUTHERLAND."

Southerland was not in the car, but was arrested two days later by officers after a tip was received that he might well be involved. Both Wright and Southerland, without benefit of counsel, were placed in a lineup and Southerland

---

[4]Middlebrook described the lighting in the parking lot as follows:

"Well, in front of the store it was good. It was almost like daylight because the store has plate glass windows up front and has fluorescent lighting on the inside that puts out the good light, plus there is a night light, or a night watcher, outside on the far right hand side, which is in somebody's yard."

Q. Let's see. When you say on the right, as you're looking at it?

A. right.

Q. Is that the side where the car was parked?

A. Right. Plus there was a 'phone booth, and it had lights on it."

was identified by both Hall and Middlebrook[5] as one of the three robbers. Prior to trial, a motion was filed to suppress the in-custodial lineup identification of Southerland on the basis of the fact that the arrest of that appellant was illegal, in that it was made without probable cause to believe that Southerland had committed a crime; further, that the information received from a confidential informant was not reliable. At the hearing, held approximately a week before the trial, Officer Kieth Rounsavall, who made the arrest of Southerland, testified that another officer, Boyd Pettyjohn, informed him that Southerland was "hanging out at a lounge on Asher Avenue, and was supposedly involved in the robbery of John's Liquor Store." Pettyjohn testified that he received information relative to Southerland, but was not at liberty to divulge from whom this information was received. He did not know the informant personally and had never relied on this person before. He testified that he talked to the informant on the telephone and was asked if he was familiar with the robbery of John's Liquor Store. Upon receiving an affirmative reply, the informant advised that the third man was Southerland, "and they gave me a description of him and his car, said that he had been bragging about his record, the police thought he was hurt and he wasn't hurt. He had been talking about it at Jim's Lounge out on Asher, and he was supposed to be either a half-brother, or some type of brother, to one of the other subjects we had. Also told me what kind of car he drove. The information was that this person had overheard the gentleman say he had been involved."

The court stated that unless the state desired to produce the person, it was going to hold that the arrest was not valid since the court did not feel there was sufficient or probable cause shown for making the arrest.[6] Officer Pettyjohn then stated that the informant did not have enough information to

---

[5] The statement of facts by both the state and appellants reflects that both Hall and Middlebrook made the identification; however, the record only reflects Hall's identification of Southerland at the lineup.

[6] The court commented:

> "I don't think you can just go out and arrest a man because someone told you he was connected with a robbery, unless that somebody is willing to come in and swear out a warrant, or something like that."

swear out a warrant, whereupon the court suppressed the lineup evidence, holding that the arrest was invalid; however, it did not dismiss the charge against Southerland.

On December 3, just before the trial was to commence, defense counsel filed the following motion:

"Let the record reflect that I have filed on behalf of John M. Southerland a Motion in Limine, asking the Court to have an in-chambers hearing concerning the independent identification of the defendant, John M. Southerland. The Court, in a previous hearing, quashed the incustodial lineup view of the prosecuting witness, and it is the contention of this defendant that without a showing on behalf of the prosecution that the prosecuting witness can identify the defendant independent of any information received by his incustodial view that it is improper. And we, therefore, object to the prosecuting witness identifying the defendant in front of the jury, all of which will prejudice the jury in any event the Court's ruling in the courtroom."

This motion was overruled and Hall and Middlebrook identified Southerland in the courtroom.

The court erred in not granting the motion. Of course, Southerland, after the original arrest (September 22, 1974) was subsequently arrested (October 17, 1974) when the prosecuting attorney filed an information and a bench warrant was issued thereon. However, the pretrial identification took place before that time, and we agree with the trial court that there was an insufficient showing of probable cause for this first arrest. The description of Southerland's automobile contributed nothing, for it was never tied into the robbery at all. Accordingly, we have only a statement from an undisclosed informant, about whom the police apparently knew nothing, not having previously relied on his or her information, who simply stated that Southerland had bragged about his record and further, that the police thought he was hurt "and I wasn't hurt." While Officer Pettyjohn stated that he talked with the informant for approximately ten minutes over the telephone, and that the informant discussed the facts

with the officer without Pettyjohn relating any facts known by the police department, the officer did not testify concerning the information received in the ten minute conversation other than what has already been set out. Of course, the fact that the informant had not been used before, and could therefore not be characterized as a "reliable" informant, is not controlling, for there is a "first time" for anyone who conveys information to the police, but, as stated, on the showing made, probable cause was not established.

The state relies on *Johnson v. Louisiana*, 406 U.S. 356, where the appellant urged that his nighttime arrest without a warrant was unlawful in the absence of a valid excuse for failure to obtain a warrant, and further urged that his subsequent lineup identification was a violation of the claimed invasion of his Fourth Amendment rights. The court held that the validity of Johnson's arrest was beside the point in that case, for it was clear that no evidence that might properly be characterized as a fruit of illegal entry and arrest was used against him at his trial. However, in *Johnson* prior to the lineup, at which Johnson was represented by counsel, he was taken before a committing magistrate to advise him of his rights and to set bail, and at the time of the lineup, the detention of the appellant was under the authority of this commitment. Those facts, of course, are not present in the instant case.

Here, however, the validity of the appearance in the lineup is not controlled by *United States v. Wade*, 388 U.S. 218, which deals exclusively with the Sixth Amendment right to counsel. There is no contention in the case before us relating to the fact that Southerland was without counsel, and under the circumstances involved in this warrantless arrest, it does not appear that it would contain merit even if raised. See *Kirby v. Illinois*, 406 U.S. 682.

Appellant's motion to suppress actually raised Fourth Amendment issues, *viz.*, the guarantee against unreasonable seizures that protects individuals against arrests without probable cause. In *Wade*, the court set out the criteria for determination of whether an in-court identification was based upon an independent observation, or was based on the

lineup procedure.[7] While we know of no federal case which requires such a hearing where Fourth Amendment rights are involved, it would appear sound logic to conduct such a hearing. As already stated, because of lack of probable cause for the arrest, a Fourth Amendment right was violated and unless any evidence acquired through that violation is to be nullified, it would appear that the same standard applied in *Wade* should be likewise required.

Let it be understood that we are not saying that an illegal arrest always bars a pretrial identification, or even that an independent hearing (to determine that an in-court identification was not tainted by such a pretrial identification) is always required. See *Wise* v. *Murphy*, 275 A. 2d 205. However, under the circumstances herein, we think such a hearing is essential.

Hall described the events that occurred when the three robbers came into the store, including the fact that he was hit with a bottle, and "went down." On several occasions, he refers to individuals, "and one of them came over the counter, and I don't know how the other one got over there *** and during this process, well, I picked up a bottle and hit one of them in the face. *** One of them came over and kicked me and asked me where the rest of the money was at. *** They were going through the cash register and under the counter at this time *** and he turned and just as he turned, that's whenever I grabbed the gun and turned around and started firing." When asked if he had a "good look" at their faces, Hall replied, "Well, just about like I am looking at you now." His description of the robbers was in general terms, *i.e.,* somewhat vague, and it must be borne in mind that Hall was

---

[7]The court stated:

"Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

unable to identify Wright. The identification of Southerland by the witness Middlebrook, who appeared very positive and who was much more specific in his identification, is not questioned, but our record does not reflect whether Middlebrook and Hall viewed the lineup at the same time, or any of the circumstances attending the pretrial identification. We have concluded that an independent hearing should be conducted prior to retrial, under the standards set out in *Wade,* as a matter of determining whether Hall's in-court identification was tainted by the pretrial identification.

"III.

THE COURT ERRED IN GIVING THE STATE'S REQUESTED INSTRUCTION NO. 5."

The trial judge gave the following instruction:

"If you find the defendant guilty of Robbery, you will say:

'We, the Jury, find the defendant Guilty of Robbery and fix his punishment at not less than three years nor more than twenty-one years imprisonment in the State Penitentiary.'

If you find the defendant not guilty of Robbery, or if you have a reasonable doubt as to his guilt, you will say:

'We, the Jury, find the defendant Not Guilty.'

In either event, your verdict must be unanimous and signed by one of your members as foreman."

The instruction was objected to on the basis of the fact, "It is not clear in that the jury might feel they have to convict both defendants."

We find no merit in this contention. Appellants rely upon *Wolf* v. *State,* 152 Ark. 196, 238 S.W. 25, where two defendants were tried before the jury, and an instruction was

requested by appellants that commenced, "You are instructed that, if you find the *defendants* [our emphasis] guilty, you shall . . . . " The court refused to give this instruction but gave a single instruction commencing, "If the defendants, or either of them, are found guilty . . . ." We held that the trial court acted correctly when it gave the latter instruction and we disapproved the requested instruction because it would have left an inference that the jury would have to return a verdict finding both the appellants guilty or both not guilty. It is here argued that the two defendants were entitled to separate instructions, but *Wolf* does not so hold; rather, it simply states that an instruction given concerning the verdict of guilt or innocence should not give rise to an incorrect inference that the jury must find both defendants innocent or both guilty. It will be noted that the instruction here challenged does not use the plural "defendants" but rather the singular "defendant." For that matter, if appellants had misgivings about the validity of the verdict because of the instruction, a poll of the jury could have been requested as a matter of ascertaining that each juror was convinced beyond a reasonable doubt that each of the two defendants was guilty.

At any rate, there could have been no prejudice for before the jury retired, the court stated to the jury that it was giving them the forms of the verdict, and it then gave a specific charge on Southerland as to guilt, fixing the punishment, and then, as to not guilty. The same procedure was followed as to Wright. Appellants argue at least part of this charge was given orally and that this fact constituted error. Appellants are mistaken, for in *Richardson v. State,* 80 Ark. 201, 96 S.W. 752, we held that if it affirmatively appears that the giving of an oral instruction on the form of the verdict is harmless, no reversible error occurs even though there was a request for a written instruction. Certainly, an oral instruction on the verdict forms would appear harmless in view of the simplicity of the forms and the clear separation of the charge with respect to each defendant. Nor was there any objection made at the time the verdict forms were given.

In accordance with the reasons set out herein, the judgment of the court is affirmed as to appellant Wright, but reversed as to appellant Southerland, and remanded to the

Pulaski County Circuit Court (First Division).

It is so ordered.

Roy, J., not participating.