## Rodney Lee ROWE *v.* STATE of Arkansas

CR 80-99                                    607 S.W. 2d 657
Supreme Court of Arkansas
Opinion delivered November 10, 1980

*Lessenberry & Carpenter*, by: *Thomas M. Carpenter*, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Rodney Lee Rowe was found guilty of aggravated robbery and attempted capital murder of Mrs. Katie Cage and sentenced to terms of ten years for aggravated robbery and 30 years for attempted capital murder, as fixed by the jury. After trial on December 11, 1979, the trial judge ordered that the sentences run consecutively. The offenses were committed on the night of January 23, 1979, as Mrs. Cage was preparing to enter her dwelling house at 22 Tallyho Lane.

Appellant contends that the trial court erred in accepting the jury verdicts with two convictions for one offense. He was charged in a two-count information with having committed the crime of aggravated robbery by holding a gun on Mrs. Katie Cage for the purpose of committing a theft and the crime of criminal attempt by purposely engaging in conduct constituting a substantial step towards the commission

of capital murder of Mrs. Katie Cage during the course of, and in furtherance of, attempted robbery. Appellant admits that the evidence was sufficient to sustain the conviction on both charges, but argues that he could not legally be found guilty of both charges or sentenced on both. He contends that acceptance of the jury verdict violated the Arkansas statutes and the prohibition against double jeopardy contained in both the Fifth Amendment to the Constitution of the United States and Article II, § 8 of the Constitution of Arkansas.

Mrs. Katie Cage testified that she arrived at her home at about 11:30 p.m., got out of her car and walked to the back of the automobile in her driveway when she heard someone running toward her. Mrs. Cage said that she thought that this was one of the neighborhood joggers and kept walking toward her house, but when she realized that this person was coming toward her too fast and hard to be a jogger, she stopped at the edge of her driveway near the front steps of the house, looked around, heard someone say "help" and saw this person running frantically toward her with his hand extended. She thought that someone was chasing him, but when he came closer to her, she realized that no one was chasing him and that the cry had been "hey, hey, hey," instead of "help." The runner then came up to her with his hand "out." She tried to defend herself with her hand, and said, "You are not going to do this." When this person responded, "Oh, yes I am," she demanded that he get his hand off her and "get out of here." When she said this, she heard a gun go off and realized that she had been shot. She stepped back but did not fall. She felt that her assailant would shoot her again if she did not fall, so she fell to the ground and called out to her husband. As she was falling, her assailant grabbed her purse off her shoulder and ran. According to Mrs. Cage, she and her assailant had scuffled for about two minutes. She positively identified appellant as the assailant.

The information actually charged aggravated robbery under Ark. Stat. Ann. § 41-2102 (1) (a) (Supp. 1979). The specific language was that appellant did "threaten to employ physical force upon Mrs. Katie Cage by holding a gun to her with the purpose of committing a theft from her and did have

in his possession the following deadly weapon, to-wit: a pistol, \*\*\*". This did not charge an offense under § 41-2102 (1) (b). The criminal attempt charged under Ark. Stat. Ann. § 41-701 (1) (b) (Repl. 1977) was that appellant "did unlawfully, feloniously attempt to commit an offense by purposely engaging in conduct constituting a substantial step in a course of conduct intended to culminate in the capital murder of Mrs. Katie Cage, in the course of and in furtherance of the attempted commission of robbery." Appellant waived formal arraignment and entered pleas of not guilty. Several pretrial motions were made but no objections to the information or to being put to trial on both counts was ever made. The state was never asked to elect to proceed on one count or the other and there was no motion to sever the charges for trial. No pretrail objection of the nature of those now made was ever asserted.

The jury was given instructions defining both offenses contained in the information. No objection was made by appellant to any of these instructions. No mention was made by the judge in his instructions to the jury that the offenses should be considered alternatively or that appellant should be sentenced on only one of the charges if it found him guilty of both. No such instruction was requested by appellant. The verdict forms which the judge submitted to the jury were described in one of the instructions given. They did not provide for consideration of the offenses charged in the alternative or for the fixing of only one sentence. No objection was made and no alternate or substituted verdict form was requested by appellant. When the verdicts were returned, no objection was made. Thereafter, the judge asked if there was any legal reason why sentence should not be imposed at that time and appellant's attorney[1] responded that there was not. The sentences were then pronounced, and the court ordered that they run consecutively. No objection was made, either to the sentences or their being made to run consecutively.

All of the arguments now advanced on appeal could have been raised in the trial court, but none of them were. Even though an alleged error is of constitutional proportion, we do

---

[1]Appellant is represented by a different attorney on appeal.

not consider it for the first time on appeal. *Shepherd* v. *State*, 270 Ark. 457, 605 S.W. 2d 414 (1980); *Clark* v. *State*, 264 Ark. 630, 575 S.W. 2d 622.

Appellant contends that he could not be convicted or sentenced for both offenses because of the provisions of Ark. State. Ann. § 41-105 (1) (e) (Repl. 1977). That subsection provides that a defendant may not be convicted of more than one offense if his conduct constitutes an offense *defined as a continuing course of conduct* and is uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses. Appellant argues as if the italicized language was not even a part of the subsection on which he relies. Neither offense charged is defined as a continuing course of conduct. We might as well dispose of this argument of appellent by pointing out that neither aggravated robbery nor attempted capital muder is defined as continuing a course of conduct, relying upon *Britt* v. *State*, 261 Ark. 488, 549 S.W. 2d 84. We made it clear in *Britt* that a continuing offense must be a continuous act or series of acts set on foot by a single impulse and operated by an unintermittent force. We emphasized the distinction made by Mr. Wharton in his treatise (Wharton's Criminal Procedure) which was pointed out in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). According to that distinction, when the impulse is single but one charge lies, no matter how long the action may continue, if successive impulses are separately given, even though all unite in swelling a common stream of action, separate charges lie; and the test is whether the individual acts are prohibited or the course of action they constitute; if the former, each act is punished separately, if the latter, there can be but one penalty. We made it clear that § 41-105 (1) (2) did not change the common law rule.

Here two distinct impulses exist, according to the *Britt-Blockburger* test. When appellant approached Mrs. Cage outside of her home, carrying a deadly weapon, with hand outstretched, and she told him, "You are not going· to do this," he responded, "Oh, yes I am." When she resisted, saying, "Oh, no you're not," he shot her, took her purse and fled. Mrs. Cage testified the encounter lasted three minutes. The first impulse setting off a course of conduct, the aggravated

robbery, occurred when appellant, armed with a deadly weapon, approached Mrs. Cage with hand outstretched. When Mrs. Cage refused to willingly turn over her purse, the second impulse, the impulse to use the weapon to overcome her resistance, was instituted. If Mrs. Cage had not resisted appellant, the second impulse may never have originated. Clearly two separate offenses were committed, each commencing at a distinct point in time as the result of a separate impulse. We cannot say that the aggravated robbery and the attempted murder were germinated by a single impulse, therefore the protection sought by appellant under § 41-105 (1) (2) must be denied him. Appellant's attempt to distinguish *Britt* on the basis that more than one victim was involved there demonstrates a deficient reading of *Britt*. In that case, three offenses against two victims were charged. In two of the counts, it was alleged that one person was the victim of both a robbery and a battery.

Appellant contends that the trial court erred in failing to suppress Mrs. Cage's identification of him as the person who robbed and shot her. His entire argument is based upon the contention that the lineup procedure was improper. He says the issue is whether his participation in the lineup was an infringement upon his constitutional rights. Specifically, he asserts that he was denied his request for counsel in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article II, § 8 of the Arkansas Constitution.

Appellant is in error in his identification of the real issue in this case. The issue is whether the in-court identification of him, by the victim of the crime, was tainted by the lineup procedures. If it was, then the trial court should have suppressed it. If it was not, the identification testimony of Mrs. Cage was admissible. The state had the burden of establishing by clear and convincing evidence that, in the absence of counsel, the courtroom identification was based upon independent observation rather than upon a constitutionally infirm lineup procedure. *Sims* v. *State*, 258 Ark. 940, 530 S.W. 2d 182. In considering this question, it is important that it be remembered that when Mrs. Cage testified during the trial, no mention was made of the lineup or her

previous identification of Rowe on direct examination. Her "lineup identification" was brought to the attention of the jury on cross-examination. Appellant opened up the subject at his own risk. *Parker* v. *State*, 265 Ark. 315, 578 S.W. 2d 206. Perhaps this is the reason appellant made no objection to the in-court identification after his pretrial motion to suppress had been denied. It was not necessary for him to object in order to preserve his pretrial objection, but his failure to object or more to strike the testimony during the trial precludes him from relying upon anything then disclosed which had not been brought out in the pretrial hearing. *Whitmore* v. *State*, 263 Ark. 419, 565 S.W. 2d 133. We do note, however, that Mrs. Cage's courtroom identification of Rowe was positive, certain and unequivocal, and that it was made with assurance. In considering the question presented, we must recognize that the trial judge had an opportunity to observe Mrs. Cage, both in her in-court and pretrial testimony. See *Sims* v. *State*, supra.

For the purposes of our treatment of this point, we will assume, but not hold, that Rowe did not waive his right to the presence of counsel at the lineup at which Mrs. Cage first identified him. We have recognized that the criteria for determining whether the in-court identification is based upon independent observation or upon a lineup procedure where the accused is denied counsel emanate from the seminal case of *United States* v. *Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). *Sims* v. *State*, supra; *Wright* v. *State*, 258 Ark. 651, 528 S.W. 2d 905. The factors to be considered are (1) the prior opportunity of the witness to observe the alleged criminal act, (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description, (3) any identification by picture of the defendant prior to the lineup, (4) failure to identify the defendant on a previous occasion, and (5) the lapse of time between the alleged act and the lineup identification. Although not one of the criteria, facts' disclosed concerning the conduct of the lineup are relevant.

The only testimony pertaining to the opportunity of Mrs. Cage to observe her assailant was her own. Since it is uncontradicted, we will it as factual. About five minutes

elapsed between the time her attention was attracted to the person running toward her and the time this person grabbed her purse and fled. A call which she interpreted as "help" focused her attention on this person. The night was bright and a "fairly large" moon was shining. Her back was toward the porch of the house where two lights were burning. They were shining directly in her assailant's face. During the three-minute encounter, her assailant was never more than three feet away from Mrs. Cage. She admitted that she had imbibed about two drinks of intoxicants prior to her arrival at her home. If her testimony is to be believed, Mrs. Cage had ample opportunity to observe the perpetrator of the crime at the time it was committed.

Appellant points out only one flaw in Mrs. Cage's pre-lineup description of Rowe as her assailant. She had described the person who robbed and shot her as being between 20 to 25 years old. It is asserted that Rowe was only 15. Perhaps he was, as a police detective stated, but, before making his ruling on the motion to suppress, the trial judge remarked that Rowe appeared to him to be considerably older than 15 years. This discrepancy certainly did not warrant suppression of Mrs. Cage's identification.

Mrs. Cage did, prior to the lineup in which Rowe appeared, say that another person looked like her assailant by selecting his picture from hundreds of pictures in two "mugbooks" shown her by a Little Rock police detective. There is no indication that she had ever seen a picture of Rowe prior to the lineup. The photograph Mrs. Cage selected was "a Polaroid" of Gerald Sims. He was picked up by the police, but as soon as Mrs. Cage looked at him, she said that he was not her assailant. This "misidentification" did not detract from the in-court identification.

There is no indication that Mrs. Cage had failed to identify Rowe on any previous occasion. Appellant finds great significance in the fact that Mrs. Cage testified that she did not inform the police of her decision that Rowe was her assailant until 20 or 25 minutes after she viewed the lineup. There were seven persons in the lineup. A photograph of the lineup was introduced. There is no suggestion that it was un-

fairly constituted. There was testimony that there was no great physical disparity among the participants. The lighting was good and Mrs. Cage said that she could see well. The officers and Mrs. Cage agree that no one suggested that Rowe was a suspect. One of the officers testified that three of the seven were suspects. After viewing the lineup, Mrs. Cage emphatically identified Rowe to the police officers present. The lineup was for identification purposes in connection with at least two independent crimes with different victims. The first observer was brought into the room at 2:35 p.m.; Mrs. Cage, the last, was brought into the room at 2:50 p.m. During her view of the lineup, each of the seven persons in it was required to put a rag in the form of a cap on his head, because Mrs. Cage had described her assailant as having worn a scarf tied around his head. Mrs. Cage siad that she immediately recognized Rowe as her assailant when she walked into the room and was stunned to see him, but she did look at the other persons. The officer who actually conducted the lineup said that Mrs. Cage was in the room only five to ten minutes. The delay on the part of Mrs. Cage was certainly not a sufficient basis for our saying that the evidence that the identification was untainted was not clear and convincing.

Finally, nine weeks elapsed between the date the crime was committed and the lineup. Mrs. Cage saw no photographs on the day of the lineup and it would be fair to conclude that she never saw a photograph of Rowe until he sent her one after she had identified him at the lineup. Mrs. Cage testified positively that her identification at the lineup was based upon her observations at the time of the crime and not upon anything that happened after the crime.

The central question is whether, viewing the totality of the circumstances, the courtroom identification was reliable, and we must receive questions of credibility as the trial court did; it is only when, after viewing the totality of the circumstances pertaining to the in-court identification, we can say that it was patently unreliable that we hold it inadmissible as a matter of law. *Mayes* v. *State*, 264 Ark. 283, 571 S.W. 2d 420. We cannot say that Mrs. Cage's in-court identification was inadmissible as a matter of law or that the state fail-

ed to show by clear and convincing evidence that the identification was not tainted in any way.

Appellant only mentions the Fourteenth Amendment in his argument as a vehicle for application of the Fifth and Sixth Amendments to the United States Constitution. He never argues any Fifth Amendment right. His entire argument is based upon his alleged deprivation of the right to counsel.

Appellant also complains that the trial judge refused his request for an instruction taken from AMCI 202 relating to limitation of the jury's consideration of prior inconsistent statements. The request was made after both parties had rested rather than at the time the statement was introduced. The state objected because the instruction was not given at the proper time. The note on use accompanying the model instruction says that it should be given if requested by counsel at the time the prior inconsistent statement is made. The trial judge stated that he would have given the instruction if it had been requested in a timely manner.

Appellant had not convinced us that he was prejudiced by the denial of his belated request. He has not pointed out any particular prior inconsistent statement to which the instruction should have been applicable. Furthermore, the jury was instructed that it had a right to consider all the evidence in the light of its own observation and experiences in the affairs of life, and that, in determining the credibility of any witness and the weight to be given his testimony, it might take into consideration the consistency or inconsistency of his testimony, and any other fact or circumstance tending to shed light upon the truth or falsity of his testimony. Under all the circumstances, we cannot say that the trial judge erred in refusing to give this instruction at the time it was requested.

Since we find no reversible error, the judgment is affirmed.

Mr. Justice Purtle dissents.

JOHN I. PURTLE, Justice, dissenting. In my opinion, the trial court erred in accepting the jury verdicts of two convic-

tions for one offense. The court instructed the jury on two counts of aggravated robbery as defined by Ark. Stat. Ann. § 41-2102 (1)(a) and (b) (Repl. 1977) which reads as follows:

(1) A person commits aggravated robbery if he commits robbery as defined in section 2103 (§ 41-2103) and he:

(a) is armed with a deadly weapon, or represents by word or conduct that he is so armed; or

(b) inflicts or attempts to inflict death or serious physical injury upon another person. ·

The court also instructed the jury pursuant to the provisions of Ark. Stat. Ann. § 41-701 and § 41-1501 (Repl. 1977) as they related to attempted capital murder. The court's Instruction No. 9 reads as follows:

Rowe is charged with the offense of attempted capital murder. A person commits the offense of capital murder if he commits robbery and in the course of and in the furherance of the felony, he causes the death of any person under circumstances manifesting extreme indifference to the value of human life. To sustain the charge of attempted capital murder the State must prove the following things beyond a reasonable doubt:

First: That Rowe intended to commit the offense of capital murder.

Second: That Rowe purposely engaged in conduct that was a substantial step in a course of conduct intended to culminate in the commission of capital murder, and

Third: That Rowe's conduct was strongly corroborative of the criminal purpose.

"Purpose." A person acts purposely with respect to his conduct when it is his conscious object to engage in the conduct.

The court did not indicate whether the jury should consider the acts of the appellant as one offense or as separate and distinct offenses.

It seems plain to me that all of the elements of aggravated robbery as given in the court's instruction are included in the instruction on attempted capital murder. I agree with the appellant that the court erred in permitting the jury to assess multiple sentences for one offense. I do not contend that he could not have been properly tried on each charge but insist that he could be convicted of only one.

The sentences as handed down are prohibited by the double jeopardy provisions of the United States Constitution and the Constitution of the State of Arkansas. The United States Supreme Court held in *North Carolina* v. *Pearce*, 395 U.S. 711 (1969), that the constitutional prohibition against double jeopardy consists of three guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after a conviction; and (3) it protects against multiple punishments for the same offense. In the case before us, there was only one single continuous uninterrupted brief episode. The United States Supreme Court recently restated the prohibition against multiple punishment for the same offense in the case of *Illinois* v. *Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed. 2d 228 (1980). In *Vitale* the test applied was whether each of the distinct statutory provisions defining the two offenses requires proof of a fact that the other does not. In my opinion, the attempt to commit capital murder required proof which was not required to prove aggravated robbery; however, all elements of proof of aggravated robbery were necessary to prove attempt to commit capital murder.

In *Harris* v. *Oklahoma*, 433 U.S. 682 (1977), the United States Supreme Court held that a defendant's conviction for felony murder based on a killing in the course of an armed robbery barred a subsequent prosecution against the same defendant for robbery.

The purpose of enacting Ark. Stat. Ann. § 41-105 (Repl. 1977) was to clarify the Fifth Amendment to the United

States Constitution and Art. 2 § 8 of the Arkansas Constitution as they related to double jeopardy. I am not sure the legislation was as effective as it was intended. I agree with appellant that the conviction for both aggravated robbery and attempted capital murder is prohibited by § 41-105 (1)(2) which states:

(1) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(e) the conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

From a commonsense interpretation of the above statute it appears to me that it is nothing but an honest effort to prevent double jeopardy as defined by the state and national constitutions. Since I believe the appellant was guilty of conduct which constituted a continuing course of conduct which was uninterrupted until it was completed, he cannot be sentenced twice for the same offense.