Mark Anthony PERKINS *v.* STATE of Arkansas

CR 88-190                                           767 S.W.2d 514

Supreme Court of Arkansas
Opinion delivered April 3, 1989

*Grant & Berry*, by: *Sandra T. Berry*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

JACK HOLT, JR., Chief Justice. Appellant Mark Anthony Perkins was convicted on charges of burglary, aggravated robbery, rape, and two counts of theft. On appeal, Perkins argues that the evidence was insufficient to support the burglary and rape convictions and that the trial court erred in not granting a directed verdict on one of the theft charges as there was but one act of theft. We find the arguments to be without merit and affirm.

On the evening of May 6, 1988, Perkins was driving a truck and was accompanied by two men — James Hammond and Tyrone Jones. Hammond and Jones apparently came up with the idea to rob someone named Wochner. Hammond had done yard work for Ms. Wochner and knew she had money. The trio drove to a residence in Little Rock, and Perkins parked the truck while Hammond and Jones broke in through the front door of the home.

Perkins entered the residence only minutes after the others had broken in. He later told detectives of the Little Rock Police Department that the original plan had been to knock on the door, and he had no idea Hammond and Jones actually broke into the residence.

Ms. Wochner testified that she was awakened sometime after 11:30 p.m. on May 6 when she heard the sound of breaking glass. Thinking it was her niece, who shared the home but was not in, Ms. Wochner went to the living room and was confronted by Hammond who held a gun and told her that he would kill her if she did not give him her money. At the same time she heard voices coming from the kitchen.

Ms. Wochner gave Hammond the money she had in her purse and was told to turn around. She heard the individuals in the kitchen come into the room and was told to lie on the floor in the hallway. Some type of clothing from the niece's bedroom was placed over her head and throughout the remainder of the ordeal Ms. Wochner never again actually saw her attackers. She was able to identify only Hammond.

Perkins, Hammond, and Jones spent an hour or more in the home. Each took turns holding the handgun to prevent Ms. Wochner's escape while the others searched for valuables. The trio took money, jewelry, credit cards, television sets, lamps, a tape recorder, a camera, a typewriter, Ms. Wochner's car, and other items. Individually, both Ms. Wochner and her niece each suffered a loss of over $2,500.00 in money and personal property.

Ms. Wochner testified that while she was lying in the hallway she was repeatedly kicked, called names, stepped on, and hit with some object while her attackers demanded to know where she had more money. At one point, someone took the handgun and twisted it into Ms. Wochner's vagina. After that, the gun was placed between her buttocks several times. Nothing was said by the attackers, and Ms. Wochner was unable to identify the individual or individuals who raped her.

### Burglary — Sufficiency of the Evidence

Perkins argues that there was insufficient evidence to support the burglary conviction and that the trial court should have granted his motion for a directed verdict. Perkins rests his

argument on the scenario in which he parked the truck while Hammond and Jones deviated from the plan to knock on the front door and instead broke into the house. From this, Perkins claims that he could only be convicted of burglary as an accomplice. Because he had no knowledge of the plan to break into the house, rather than gain admittance by knocking, Perkins contends he did not solicit, advise, encourage, or coerce another to commit burglary; or aid, agree to aid, or attempt to aid in planning or committing the offense. Ark. Code Ann. § 5-2-403 (1987). We find the evidence sufficient and resolve this issue without addressing the "accomplice" argument.

■ The offense of burglary is defined in Ark. Code Ann. § 5-39-201 (1987) as follows:

A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of commiting therein any offense punishable by imprisonment.

Perkins admitted in his statement that the trio intended to rob Ms. Wochner. Perkins makes no argument that he did not actually enter the residence or that he did not subsequently commit aggravated robbery and theft. Nor does he argue that he had a lawful right to be in the house. As such, the jury was warranted in finding that Perkins entered or remained unlawfully in the occupiable structure of another with the purpose of committing therein an offense punishable by imprisonment.

### Rape — Sufficiency of the Evidence

Perkins contends that the evidence was insufficient to support the rape conviction because there was no evidence he was the one who raped Ms. Wochner and there was no evidence of a common purpose or plan to rape her. Under these circumstances, Perkins claims he could not be convicted as a principal or as an accomplice. We conclude that there was sufficient evidence to support the jury's verdict.

■ In cases involving charges of rape or deviate sexual conduct, even where the victim is unable to personally identify the defendant as the one who committed the offense, the issue of the defendant's guilt may go to the jury based on circumstantial evidence alone. That evidence may serve as the basis upon which

to support a conviction provided the evidence is substantial in nature. *Smith* v. *State*, 277 Ark. 64, 639 S.W.2d 348 (1982).

On this issue, Ms. Wochner's testimony was as follows:

> Well, they started ransacking the house and every time they walked past me somebody took a sap and hit me in the side of my head up along my head. And they did that numerous times . . . They kept plundering and demanding money and wanting to know where the money was and I told them that was all the money I had. They went through the bank records and stole, took the bank cards and told me how much money I had in the bank and they knew I had more money in the house and when I said that I didn't they took the gun . . . I was still in the hallway face down. And he took the gun and he slid it between the labia to the vagina and twisted it in and held it there. And then cocked the pistol. And several times after that they slid the gun between the buttocks and would hold it there. And then one of them made me get up and go into the front bedroom and shoved me across the foot of the bed . . . .

The foregoing testimony clearly establishes the commission of rape as set forth in Ark. Code Ann. §§ 5-14-101(1)(B) and 5-14-103(a)(1)(1987).

The issue becomes whether there is sufficient evidence to link Perkins to the conduct described by Ms. Wochner. In his statement to detectives, Perkins admitted that he was with Hammond and Jones when Ms. Wochner was moved from the hallway to the bedroom. The evidence indicates this took place immediately after the rape incident in the hall. The statements by Perkins were corroborated by Hammond who testified for the State that Perkins was with them when they moved Ms. Wochner to the bedroom and that Perkins was actually the one who moved her. Also, while they were still in the hallway, it was Perkins who was "hitting the lady in the head with his, with something wrapped around it, it was a cloth . . . Hitting her in the head asking for more money." Hammond further testified that Perkins, like the others, took turns holding the gun in order to keep Ms. Wochner in the hallway.

While circumstantial, the foregoing testimony is substantial

and supports the verdict. Perkins was in the hall just before Ms. Wochner was moved, which is when the rape took place. More particularly, the evidence indicates Perkins was the one hitting Ms. Wochner and demanding to know where more money was kept. From Ms. Wochner's testimony it is evident that she was raped with the handgun just after she responded that she had no more money.

### Directed Verdict — Theft

The argument under this heading is that double jeopardy precludes conviction on more than one count of theft; namely, despite the fact that property belonging to two individuals was taken from the home of Ms. Wochner, there was but one act of theft. We disagree.

A case somewhat related to this one is *Watson v. State*, 295 Ark. 616, 752 S.W.2d 240 (1988), which involved convictions on three counts of theft by receiving. We found that the act of receiving stolen property was a single act set on foot by a single impulse and operated by an unintermittent force. The result was that only one conviction for theft by receiving could lie.

*Watson* was based upon Ark. Code Ann. § 5-1-110(a)(5) (1987) which precludes conviction of more than one offense when the same conduct of a defendant may establish the commission of more than one offense, provided the conduct constitutes an offense defined as a continuing course of conduct. In *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988), we said that for § 5-1-110(a)(5) to apply, the conduct itself *must be* defined as a continuing course of conduct crime. Examples are found in *Smith, supra*, and in *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84 (1977). While Perkins concedes that theft is not a continuing course of conduct offense, and therefore section 5-1-110(a)(5) does not apply, we find our language in *Watson* useful in disposing of Perkins' claim that there was but one act of theft.

The case before us simply does not involve "a single act set on foot by a single impulse and operated by an unintermittent force." Whereas the initial intent may have been to rob Ms. Wochner, the evidence shows that the intent subsequently shifted to the niece's property. Where "successive impulses are separately given, even though all unite in swelling a common stream of action, separate

charges lie." *Rowe* v. *State*, 271 Ark. 20, 607 S.W.2d 657 (1980). *See also, Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986). A review of the abstracted record convinces us that successive impulses were separately given — first as to the theft of Ms. Wochner's property and, second, as to the niece's property.

Perkins, Hammond, and Jones intended to rob Ms. Wochner. This intent was carried out, and the theft of Ms. Wochner's property was accomplished. Ms. Wochner's testimony then demonstrates (after she had been thrown onto her niece's bed):

> The voice in the bedroom asked me *if my niece's jewelry* was diamonds. And I told him no, they were cubic zirconiums. *She liked flashy jewelry*. [Emphasis ours.]

Later, Ms. Wochner again testified concerning the theft of property belonging to her niece:

> The other credit cards I found spread on the floor where they had probably dropped them. *They kept insisting I give them the access number for my niece's bank card.* And each time I refused. This one beat me in the head again. My ear turned purple and my eye turned black and my head was black and blue for a week or ten days. [Emphasis ours.]

We have no doubt that two separate impulses are shown. The first was to commit the theft of property belonging to Ms. Wochner. The second came later and involved the separate intent to commit theft of property belonging to the niece. As such, the convictions on separate counts of theft were proper.

Perkins also cites language from our decision in *Holder* v. *Fraser*, 215 Ark. 67, 219 S.W.2d 625 (1949), where we said,

> If a thief simultaneously steals two objects, the State may charge him with the theft of one, and under that indictment he cannot be convicted of stealing the other. A plea of double jeopardy would nevertheless bar a second trial for larceny; for there is only one offense, which the State cannot subdivide by making separate accusations.

However, in *Miller* v. *State*, 222 Ark. 476, 261 S.W.2d 411 (1953), we noted that our language in *Holder* went further:

"When the crimes involve the element of intent we see no difficulty in finding two offenses in one act."

Affirmed.