Steven BROWN *v.* STATE of Arkansas

CR 82-115                                    648 S.W.2d 67

Supreme Court of Arkansas
Opinion delivered March 21, 1983

*Jack R. Kearney,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The appellant was convicted by a jury of two counts of aggravated robbery (Ark. Stat. Ann. § 41-2102 [Repl. 1977]) and one count of first degree battery (Ark. Stat. Ann. § 41-1601 [Repl. 1977]). The jury fixed punishment at 15 years imprisonment for each count of aggravated robbery and 12 years for first degree battery. The court ordered that the sentences run consecutively. The appellant argues two points for reversal. We affirm.

The appellant first contends that there was insufficient evidence to support the verdict. On appellate review we seek to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Cassell* v. *State,* 273 Ark. 59, 616 S.W.2d 485 (1981). In determining the sufficiency of the evidence, it is necessary to ascertain only that evidence favorable to the appellee, and it is permissible to consider only the testimony that tends to support the verdict of guilt. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W.2d 434 (1970); *Rhodes* v. *State,* 276 Ark. 203, 634 S.W.2d 107 (1982). The credibility of the witnesses and the weight to be given their testimony are for the jury. *Sanders* v. *State,* 276 Ark. 342, 635 S.W.2d 222 (1982). Where the testimony is conflicting, this court does not pass upon the credibility of the witnesses and has no right to disregard the testimony of any witness after the jury has given it full credence. *Barnes* v. *State,* 258 Ark. 565, 528 S.W.2d 370 (1975).

Viewing the evidence most favorable to the appellee, the state adduced the following. Thomas Foltz, then a student at

Central High School in Little Rock, accompanied Holly Herndon to Central's football game on the night of October 9, 1981. After they left the game, they returned to Foltz's car, which was parked in front of a house at the corner of Thirteenth and Dennison. After Foltz had seated Herndon on the passenger side and began to walk around the car, two black males approached, pulled guns, and stated, "We want it all." The assailants were in a yard ten or twelve feet away when Foltz first saw them. Foltz gave them money from his wallet and his watch, and Herndon gave them two rings. One of the assailants then fired a shot that narrowly missed Foltz's head and wounded Herndon. Another shot was fired into the car.

Foltz testified that the assailants were similar in size and build to the appellant and the codefendant. However, neither he nor Herndon could positively identify either one of them. Lisa Elliot, a student at Central, testified that she had known the appellant as a fellow student during the preceding school year. She saw him and another person following Foltz and Herndon to their car. A short time later she saw appellant and another person when they ran in front of her and "bumped" her date, who did not testify. She said, "'What's going on?' And they kept on going." She did not see the robbery. She received $500 as reward money. Carlos Brodie, appellant's acquaintance, testified that when he drove through the street where and about the time the shooting occurred, he saw the appellant in that area. Mark Moore, who knew the appellant, testified that he saw the appellant twice on the evening of the shooting, once about dusk and a second time when he saw the appellant leaving the game. He also testified at a pretrial hearing that he saw the appellant in a pool hall sometime after the shooting and heard him brag, "I should have shot that redneck in the head." Although at trial, Moore stated that he could no longer remember the events to which he had testified 13 days earlier at the hearing, he did remember giving the recited testimony. Appellant denied any complicity in the robbery and shooting. He maintained that he was not in the vicinity of Central High School at any time on the day of the shooting and was attending the Arkansas State Fair. Numerous witnesses testified in support of appellant's alibi

by placing him at the State Fair during the entire afternoon and evening when the shooting and robbery occurred. Appellant and his brother testified that appellant had not been a student at Central the preceding year in contradiction of a portion of Elliot's testimony. Appellant denied that he had ever been in the pool hall where Mark Moore saw him.

Although the evidence connecting the appellant to the crime is circumstantial, the law makes no distinction between direct evidence of a fact and evidence of circumstances from which a fact may be inferred. *Cooper* v. *State,* 275 Ark. 297, 628 S.W.2d 324 (1982). In *Harshaw* v. *State,* 275 Ark. 481, 631 S.W.2d 300 (1982), we unanimously found substantial evidence to support an aggravated robbery conviction where the appellant was placed at the scene of the robbery immediately before and after it occurred, and his conduct was explainable only in connection with it. Here, Lisa Elliot, whom the jury was entitled to believe, saw the appellant following the victims and shortly thereafter running away from the scene of the crime. Carlos Brodie placed him near the scene of the alleged offense. Mark Moore saw him before the game and also leaving the game and heard him make incriminating remarks about the alleged offense. Each of these witnesses contradicted appellant's alibi defense.

A jury's finding on an alibi defense is conclusive on that issue. *McCraw* v. *State,* 262 Ark. 707, 561 S.W.2d 71 (1978); and *Butler* v. *State,* 198 Ark. 514, 129 S.W.2d 226 (1939). Reconciling conflicts in the testimony and weighing the evidence are within the exclusive province of the jury, and it is the jury's prerogative to accept such portions of the testimony which it believes to be true and discard that deemed false. *Houpt* v. *State,* 249 Ark. 485, 459 S.W.2d 565 (1970); *Sanders* v. *State, supra;* and *Barnes* v. *State, supra.* Here, viewing the evidence most favorable to the state, as we must do on appeal, we hold there is substantial evidence to support the jury's verdict.

The appellant asserts that the trial court erred in sentencing the appellant in that it abused its discretion in weighing aggravating and mitigating factors. He argues

that the trial court should have granted his request to have a pre-sentence report prepared before entering sentence. The only authority for pre-sentence investigation in our criminal code is Ark. Stat. Ann. § 41-803 (Repl. 1977), which states that the court "may" order a pre-sentence investigation, if it fixes punishment. We find no authority requiring the court to do so here.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. In dissenting in this case I realize that if this view were to prevail it would overturn the jury verdict. In my opinion this is one of the very few cases in which the jury should not have been allowed to consider the facts. The underlying reason being that there are no facts to support the verdict, thus a directed verdict should have been granted. I believe the appellant is a victim of a demanding public who wants to see that this particular crime is vindicated. It is my sincere belief that the appellant was convicted because of this public demand and because he happened to fit the description of one of the persons who committed the crime. Not one single person testified to seeing the appellant participate in the crime nor did anyone even observe him standing by the victim's vehicle. The dastardly crime resulted in the senseless shooting of a respected, popular and talented white teenager by two unknown black males. There was soon raised a public hue and cry for the apprehension of the perpetrators. Certainly the public was justified in demanding that justice be done. However, that demand for justice has, in my opinion, resulted in a severe injustice.

The function of the judiciary in this case is to require that our laws be strictly adhered to and not to join the mob in punishing a person conveniently at hand. Thomas Jefferson said: "A society that trades a little liberty for a little order will deserve neither and lose both." Taking the liberty of one person unjustly is the first step in taking liberty from all the people. Even a fairly constituted jury may occasionally reach a verdict which has no basis in the facts of the case; in

my opinion that is exactly what happened here. It is necessary for the evidence to be reviewed very carefully in order to view the injustice.

On October 9, 1981, McClellan High School played a football game at Central High School. Thomas Foltz and Holly Herndon attended the game, then returned to his car, which was parked near Central. It was at this time that they became victims of an aggravated robbery during which Holly was shot by one of the two black male participants in the robbery. Neither Foltz nor Herndon ever identified the appellant as being one of the criminals. In fact, when Foltz first viewed mug shots at the police station he picked out two other persons besides appellant as suspects. He was obviously honest and truthful. His identification testimony is summarized by his answer to a question in which he stated: "So my identification is in no way positive." He continued by saying that the two persons being tried were about the same size as the ones who robbed him and Holly. He further stated the two who robbed them appeared to him to look about the same as several hundred other blacks who attended Central. Holly Herndon, the victim of the robbery and shooting, stated she did not see the robbers until she was inside the car. She did not identify the appellant as one of the criminals who shot her.

The chief witness for the state was a female student at Central. Her testimony, both at the omnibus hearing and at the trial, was very contradictory and ambiguous. She stated she saw appellant and the other accused walking behind the victims and headed toward the student parking lot. This would have caused the appellant to go north from Fourteenth Street. However, Foltz stated that he observed the robbers coming south on Dennison from Twelfth Street. This witness stated she spoke to the victims when they left the stadium after the game but neither Foltz nor Herndon remembered seeing the witness, who stated she left with her date before the game was over. This witness testified she had met the appellant several times the year before, during school hours. However, the proof revealed appellant was not a student at Central the previous year. She claimed to have observed the appellant running away from the scene. This

was immediately after a high school football game when hundreds or maybe thousands of people were scurrying about, leaving the game. Although this witness testified she was at or very near the scene, she first learned about the incident a few days later when she called her mother. Two pistol shots were fired and some nearby people were screaming yet this witness neither heard nor saw either. When a local television station re-enacted the scene during a program called "Crimestoppers" this witness learned there was a reward being offered for information leading to the arrest of suspects in the highly publicized case. She subsequently identified two persons, one of which was appellant, and received a five hundred dollar reward. Although this witness left the game with several friends none of them ever indicated that they observed anything the witness testified about. Even her date, whom she alleges was knocked down by one of the people she saw, did not corroborate her testimony. On cross-examination the witness admitted that the name of the appellant was first suggested to her by Mr. Maples, the principal. This portion of her testimony is best described in her own words when she stated:

> I read in the paper that there was a reward for this, and that the reward consisted of $1,500.00. I received $500.00 for my statement. I did not give the name of Steven Brown or Charles Robinson to Mr. Maples, he gave them to me. He suggested the names to me.

If everything this witness said were considered true and accurate, all it did was place appellant near the crime scene where there were several hundred others matching appellant's physical appearance. Any of the others meeting this general description could have been convicted upon the evidence presented at this trial.

Carlos Brodie, another witness for the state, testified that he drove past the scene of the crime and saw appellant's face in the crowd. The shooting had taken place before the witness drove past. The only other witness who gave any information of value to the state was Mark Moore. This witness testified that he observed appellant on the school grounds after the ballgame. At a date perhaps as long as a

week later the witness stated he met appellant at a pool hall and appellant was bragging about shooting a redneck and stated: "I should have shot him in the head." Without any showing whatsoever that there was a connection between the statement and the crime in question I find this statement to be wholly without value and think it was prejudicial and should not have been admitted into evidence.

An extensive investigation by the Little Rock Police Department failed to turn up a weapon or any evidence linking appellant to the shooting and robbery. The testimony most favorable to the state reveals that appellant was among the crowd leaving the stadium after the ballgame. Victim Foltz clearly remembers his assailants came from the north and were headed south toward Thirteenth street. The victims are the only known witnesses and neither could identify the appellant as one of the attackers. The witness who received $500 reward and learned the name of appellant from her principal claims the appellant was heading north behind the victims immediately before the incident.

I believe we should consider the testimony of appellant's witnesses because of the absence of direct evidence. Stephanie Herbert, Anthony Brown, Tracy Bryles, Wesly Bryant, Booker Edwards, and Leon Minor all testified the appellant was at the fair at the time of the robbery. Evelyn Minz, a teacher, identified Tracy Bryles and stated she talked to Tracy at the fairgrounds about the time Holly Herndon was shot near Central High.

The evidence that appellant was at the fair during the time this crime was committed is overwhelming. I believe there is a complete lack of credible evidence on the part of the state to support a conviction. There is no need to cite authority for the proposition that a person is presumed innocent until proven guilty beyond a reasonable doubt. The presumption of innocence is a fundamental right in the American system of criminal justice. It predates the Constitution and is an essential element of due process. *Williams v. State*, 259 Ark. 667, 535 S.W.2d 842 (1976). Conjecture and speculation are the only means the jury could have used to convict the appellant upon the evidence presented in this

case. There is absolutely no substantial evidence in the record of this case. Not one witness testified that appellant was one of the participants of the crime nor was there a single piece of tangible evidence indicating appellant's guilt. Even the cases cited in the majority opinion state unequivocally that evidence, circumstantial or otherwise, must be *substantial.* There is simply no substantial evidence in this case. The judge should have directed a verdict for the appellant. Not to do so under these circumstances constitutes reversible error. For this reason, I would reverse and dismiss.