Allen Lynn PENN *v.* STATE of Arkansas

CR 84-43                                    681 S.W.2d 307

Supreme Court of Arkansas
Opinion delivered December 17, 1984

*William R. Simpson, Jr.,* Public Defender and *Howard W. Koopman,* Chief Deputy Public Defender, by: *Carolyn P. Baker,* Deputy Public Defender.

**ERRATA**

*284 ARKANSAS REPORTS at page 235*

Detach at perforation, moisten the back, and paste over the first line on the third full paragraph of the majority opinion on page 235 of *Penn v. State:*

Penn's other two arguments are virtually inseparable.

*Steve Clark*, Att'y Gen., by: *Velda P. West*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Allen Lynn Penn was convicted of the capital murder of Anthony Faherty, a service station and convenience store clerk, who was shot during a robbery on February 8, 1983, in Little Rock, Arkansas. The death penalty was waived by the state and Penn was sentenced to life imprisonment without parole.

Penn raises three arguments on appeal. First he makes the argument that since Arkansas' capital murder and first degree murder statutes overlap, they are unconstitutional because one charged with murder during the course of a felony can either be charged with capital murder or first degree murder, depending on the whim of the state. We explained in *Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 733 (1980), why the overlap was not unconstitutional under the void for vagueness doctrine. Penn also argues that the statute violates his right to equal protection. That argument was likewise rejected in *Miller* v. *State*, 273 Ark. 508, 621 S.W.2d 482 (1981). It would serve no purpose to reiterate those views which we still hold.

Penn's other two arguments are virtually inseperable. He challenges the sufficiency of the evidence but concedes this argument hinges on whether we rule that his in-court identification by an eyewitness should have been suppressed. He states that the identification by Joe Bailey, a taxi driver, was inherently unreliable and therefore resulted in a denial of due process.

To understand Penn's argument a recitation of the facts leading to the identification is necessary. At about 2:30 a.m. on February 8, Joe Bailey pulled his taxi into the station where Faherty was working. He saw a man with a shotgun inside. The man turned and pointed the gun at Bailey. Bailey fled. Bailey encountered officer Valerie Staley and reported the incident. Bailey then returned to within about a half block of the scene to see what would transpire. The same morning the robbery occurred, Bailey described the gunman as being about 5'10" or 5'11". About four hours after the

robbery, he was shown a lineup in which Penn was the second man. Bailey identified Penn and the first man as "look alikes" of the robber. The first man was 6' or 6'1". Bailey made no positive identification.

On February 10, two days after the lineup, two detectives took Bailey to the scene. One decective stood inside the store and raised and lowered himself so that Bailey could better determine the robber's height. After that Bailey said the gunman was 5'8" or 5'10". On March 1 Bailey went to the police station and reported that he had recognized the gunman in the lineup but had decided to be silent because of fear of retaliation. He said after discussing it with his wife he decided to come forward. He identified Penn as the gunman and then verified that identification by viewing a photograph of the lineup. Bailey identified Penn at trial.

Prior to trial Penn moved that the identification be suppressed. He argued then and now that the procedure on February 10 to purportedly help Bailey determine the height of the gunman more accurately was merely a pretext to eliminate the number one man in the lineup and, therefore, make Bailey more likely to identify Penn.

The trial court held an omnibus hearing to determine whether the pretrial procedures tainted the in-court identification and ruled there was no taint. That preliminary ruling is a mixed question of law and fact, and we do not reverse the ruling unless it is clearly erroneous. *Cook* v. *State*, 283 Ark. 246, 675 S.W.2d 366 (1984). Whether an in-court identification meets constitutional standards is a question for the trial court. *Banks* v. *State*, 283 Ark. 284, 676 S.W.2d 459 (1984). Factors for determining the reliability of an in-court identification include the witness' opportunity to view the defendant, the time lapse between the crime and the identification, the level of certainty of the identification, and the accuracy of the prior description given by the witness. *Banks* v. *State, supra.* We do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of misidentification. *Wilson* v. *State*, 282 Ark. 551, 669 S.W.2d 889 (1984); *Simmons* v. *United States*, 390 U.S. 377 (1968). Once the trial court

permits the use of identification testimony as evidence, it is for the jury to decide what weight it is to be given. *Wilson* v. *State, supra.*

We find no error in the admission of the identifiction testimony. Bailey testified that the lights were on in the store and that he was absolutely positive Penn was the man inside with the shotgun. There is no evidence at all that the police encouraged Bailey's identification of Penn. Indeed, the police corroborated Bailey's testimony that he came in voluntarily on March 1 to identify Penn.

Furthermore, James Franks testified that, as he passed the station, he saw a man inside with a shotgun robbing the clerk. He also saw a black and white cab pull into the station and leave quickly. That is the type of cab driven by Bailey. Franks was unable to identify the gunman. Officer Staley, whom Joe Bailey notified after leaving the scene, testified that she had seen Penn on the same corner where the station is about an hour before the robbery.

Bailey's testimony, then, was corroborated to some degree by the evidence of the other witnesses. Whether Bailey's reason for not identifying Penn earlier was credible was for the jury to decide. See *Rowe* v. *State,* 271 Ark. 20, 607 S.W.2d 657 (1980).

The only evidence Penn offered was through one of his cellmates and his cellmate's girl friend. They both testified that they had been at the station about 1:30 a.m. the morning of the robbery and saw a man — not Penn — in the back of the store acting suspiciously. Again, this was a matter of credibility for the jury to decide. We find that the evidence was sufficient to support the conviction and that Penn received a fair trial.

In a related proceeding, Penn petitioned this court for a writ of error *coram nobis,* which we granted. *Penn* v. *State,* 282 Ark. 571, 670 S.W.2d 426 (1984). Penn had a hearing to determine whether a confession to the murder of Anthony Faherty by Donald Lewis would entitle him to a new trial. At the hearing Donald Lewis refused to testify and the judge

ruled that Penn would not be allowed a new trial. Penn does not question the correctness of that ruling in his appeal.

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11 (f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. At the omnibus hearing, Penn's counsel asked that Penn's presence not be required so that Joe Bailey would not have "one free look" at Penn, and thus bolster his identification of Penn. The trial court refused the request and Penn objected. The record does not reflect whether Bailey was present, and there is no evidence that Bailey's in-court identification of Penn was bolstered by this procedure. We find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed.