William ROBINSON, Jr. *v.* STATE of Arkansas

CR 86-108                                              723 S.W.2d 818

Supreme Court of Arkansas
Opinion delivered February 16, 1987

*Smith & Drake*, by: *Mark D. Drake*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y

Gen., for appellee.

JACK HOLT, JR., Chief Justice. Two robberies were committed on the same night in the same general proximity in Lake Village by an assailant similarly described by witnesses. After a jury trial, the appellant, William Robinson, Jr., was convicted of both counts of aggravated robbery and sentenced to concurrent forty year prison terms. Robinson argues on appeal that the evidence was insufficient to support the guilty verdicts. We disagree and affirm both convictions.

Since neither victim could positively identify Robinson as the man who committed the robberies in this case, the convictions rested largely on circumstantial evidence. We said in *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981):

> Before narrating the testimony we again emphasize, as we have often done, that although the jury should be instructed, as it was here, that circumstantial evidence must be consistent with the guilt of the defendant and inconsistent with any other reasonable conclusion, AMCI 106, that is not the standard by which we review the evidence. Our responsibility is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Brown* v. *State*, 258 Ark. 360, 524 S.W.2d 616 (1975); *Abbott* v. *State*, 256 Ark. 558, 561-562, 508 S.W.2d 733 (1974). The jury must be convinced of the accused's guilt beyond a reasonable doubt, but we, not having had the advantage of seeing and hearing the witnesses, are guided by the substantial evidence rule. *Graves & Parham* v. *State*, 236 Ark. 936, 370 S.W.2d 806 (1963).

The testimony of the events surrounding the robberies was as follows. On May 4, 1985, Tom Polk left Mike's Cafe at about 9 p.m. Polk got into his truck, leaving the door open as he reached for his keys. A black man, described by Polk as tall and slim and wearing an old jacket, jumped in on top of him and demanded three times that Polk give him his wallet. While Polk attempted to retrieve his wallet from his back pocket, the man cut Polk behind the ear and on the left arm with a "case knife or butcher knife." The assailant finally pulled Polk from the truck, grabbed the

wallet and ran. Polk said no money was in the wallet.

The attacker had an "old sock" pulled over his face which prevented Polk from positively identifying him. Polk told police though that he thought it was Robinson, whom he knew as a customer at his liquor store.

Two witnesses testified they saw a black man wearing a jacket and a beige toboggan cap peeking through a window into Mike's Cafe shortly before the robbery.

Another witness, Linda Helms, testified that she also saw a man wearing a jacket, whom she couldn't identify because of the distance, looking into the cafe that night. Moments later, Robinson, dressed the same way as the man she had seen at the cafe, approached her and a companion and asked the companion if he had a knife. The companion did not, and Robinson left. Helms testified that minutes later, at about 9 p.m., while sitting on her porch a few blocks from Mike's Cafe, she saw a man run by, again dressed the same way and now carrying a knife. She said she could not definitely say this man was Robinson.

Charlie Mae Lambert testified that Robinson was staying at her home at the time of the robbery and that a wooden handled butcher knife was discovered missing from the home shortly after the robbery.

Several witnesses testified for the defense that they had seen Robinson at a convenience store in the area at about the time of the robbery, dressed in a brown pin-striped suit. Although Robinson did not testify at his trial, he said in a statement to the police which was introduced into evidence that he saw another man, whom he identified, rob Polk. Robinson also said he won $25.00 gambling with this same man later that night.

The second aggravated robbery occurred shortly after 1 a.m. the same night. Ailene Williams testified that she was working at the desk of the La Villa Motel when a tall, thin, black man, wearing a khaki jacket and a gold toboggan cap came into the hotel lobby and made her give him the money from the cash register. She said the man was holding an old claw hammer. She was unable to say Robinson was or was not the man, although she said she thought the robber was lighter complected, but that this impression could have been created by the fluorescent lights in the

hotel lobby.

Sharon Mitchell, one of the occupants of the Lambert house where Robinson was staying, testified that she saw Robinson in the house between 12:30 and 1:00 a.m., dressed in beige and counting money. She said he acted nervous, was sweating, and his hair was flattened as if he had been wearing a cap. When she asked if he had gotten the money gambling, he said yes. Mitchell and Lambert both testified that a claw hammer, which had been on the kitchen table earlier, was missing from the house. Both said the hammer was almost new.

Robinson argues that inconsistencies in, and the circumstantial nature of, the state's proof required the jury "to resort to speculation and conjecture" in finding him guilty. Robinson cites as flaws in the state's case that Mitchell testified she saw Robinson counting the money prior to 1:00 although the first robbery produced no money and the second robbery was committed after 1:00; the missing hammer was described as almost new although the hammer used in the robbery was described as old and rusty; other people had access to the missing knife and hammer, including Mitchell's brother; neither victim could positively identify Robinson as the robber; several witnesses, including a police officer who questioned Robinson at about 10:45 p.m., testified that they had seen Robinson dressed in a pinstriped suit that night; and Helms, a key state witness, admitted that she was pressured by the state to testify.

Robinson maintains that the state's circumstantial evidence is insufficient to support the guilty verdicts. In viewing the evidence against Robinson in the light most favorable to the state as we do, *Cooper v. State*, 275 Ark. 207, 628 S.W.2d 324 (1982), we have no hesitancy in holding the proof was sufficient.

The fact that witness Helms may have been pressured to testify is of no consequence on appeal. It was for the jury to determine the credibility of Helms' testimony. *Hamilton v. State*, 262 Ark. 366, 556 S.W.2d 884 (1977). We do not "pass upon the credibility of the witnesses and [have] no right to disregard the testimony of any witness after the jury has given it full credence, at least where, as here, it cannot be said with assurance that it was inherently improbable, physically impossible or so clearly unbelievable that reasonable minds could not differ thereon." *Barnes*

v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975).

■ Robinson was seen near the scene of the first robbery wearing a jacket like the one worn both by the robber and by the man seen hanging around Mike's Cafe. There was testimony that Robinson asked for a knife shortly before the robbery and that a knife like the one used in the crime was missing from the house where he was staying. The victim of the first robbery told police he thought Robinson was his assailant. Finally, Robinson placed himself at the scene when he told the police he saw Polk robbed by another man. In the same breath, Robinson claims he won money from the assailant later the same evening. We stated in *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 183 (1983), that "[i]t is a familiar rule that a defendant's false and improbable statements explaining suspicious circumstances against him are admissible as proof of guilt."

No money was obtained in the earlier robbery. Later that night, a man fitting the same general description and also wearing a beige or khaki jacket and gold toboggan cap, committed the second robbery. A claw hammer was the weapon this time, and there was testimony that a hammer was missing from the house where Robinson was staying. Although the estimated time was shortly before the second robbery, there was testimony that Robinson was seen dressed in beige and counting money late that night.

■ Based on this series of facts, it was reasonable for the jury to conclude that Robinson committed the first robbery, and, having failed to get any money, committed the second robbery later that night. The evidence is substantial and is sufficient to support the guilty verdicts.

Affirmed.