James SMITH v. STATE of Arkansas

CR 86-205                                    729 S.W.2d 5

Supreme Court of Arkansas
Opinion delivered May 11, 1987

*Law Offices of Kevin Wyrick*, by: *Matt Keil*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. James Smith was convicted of rape and sentenced to life imprisonment. He raises two arguments on appeal: his confession should have been excluded, and the evidence of his guilt was insufficient. Smith concedes that if the confession is found to be admissible, there is sufficient evidence. We find the confession admissible and affirm his conviction.

Smith was arrested and jailed for loitering on April 4, 1986. Three days later, police officers questioned him about a rape that occurred on April 1, 1986. After he was advised of his rights and stated he understood them, he signed a waiver of rights form and then confessed to the rape. Smith now argues that his confession was not voluntary. He says he confessed because of threats made to him by police officers, and also he did not knowingly and intelligently waive his rights because of his low intelligence level, his lack of education and his inability to read.

Smith's confession was detailed. He stated he walked by the victim's home in Texarkana on March 30, 1986, and asked her for an Easter egg. He then went on his way. The next evening at approximately 11 p.m. he returned to the victim's house, saw a night light on and heard a fan blowing. He checked a window, and

it was locked; he then checked the back door, found it open, and entered the house. He was scared that the victim's husband might be there, so he got a knife from the kitchen. He saw the victim and her son asleep in a bedroom. He was scared to go into the room but remembered how his "old lady was messing around on him." This made him mad, so he entered the room with the knife in hand and touched the victim. She awoke, and he told her he was not going to hurt her; he just wanted to make love to her. He tried to put the knife down, but the victim grabbed it and cut her finger. He had sexual intercourse twice with her, and then he told her he was sorry. He also told her he loved her and wanted to marry her. He then left and went home.

In reviewing the admissibility of a confession on appeal, we consider the totality of the circumstances. *Stone* v. *State*, 290 Ark. 204, 718 S.W. 2d 102 (1986). Although Smith was found to have an IQ of 62 and to be functioning three levels below the average expected for his age, and had attained only a third grade education (although he finished 10 grades), the trial judge found that there was sufficient evidence that showed Smith understood his rights and what was happening. The officers denied Smith was threatened. The taped confession in the record appears to be spontaneous and unrehearsed; there is no hint of any heavy-handed or deceptive procedures.

The trial judge determines the credibility of the witnesses, and this was essentially a question of credibility. *Williams* v. *State*, 281 Ark. 91, 663 S.W.2d 700 (1983); *Mann* v. *State*, 291 Ark. 4, 722 S.W.2d 266 (1987). We cannot say the trial judge was clearly wrong in determining the confession was voluntary.

At the *Denno* hearing and during the trial, Smith contradicted his confession. He said the officers made up what he said. He said the victim initiated all of the contact, consented to have intercourse with him and asked him to come back later. He denied raping her. Also, during the trial, Smith said for the first time that the police made two tape recordings of his statement: one tape the way they wanted him to confess and another the way it actually happened. Smith said the first tape was admitted into evidence, and he did not know what happened to the other tape.

The victim's testimony closely paralleled the version in Smith's confession. The police officers denied that two tapes were

made. There was substantial evidence to support the verdict.

■ Smith also raises a question about the *Miranda* rights form used to advise him of his rights. Specifically, he argues that it does not tell an indigent, accused of a crime, that a lawyer will be appointed to represent him *without cost*. He points out that an identical version of the *Miranda* warning used in this case by the Texarkana Police Department was critized by us in *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986). In discussing the warning we said:

> Number four on the rights form states: 'Do you understand that if you cannot afford a lawyer, one will be appointed for you by the court before any questioning if you so desire?' Appellant maintains that the form of this statement does not meet the standards of *Miranda* because it does not provide that the appointed lawyer will represent him without cost.

> * * * *

> Had the sheriff not augmented the form with his own comments that counsel would be provided at no cost to the defendant, we would have to find the advice given appellant was inadequate. . . We caution, however, against the use of this and similar forms when informing a defendant of his rights. It must be made clear to a defendant that he has access to an attorney at absolutely no cost to him before he agrees to waive his right to counsel.

We were wrong in *Trotter*. Such a warning does comply with *Miranda* v. *Arizona*, 384 U.S. 436 (1966). There are four separate references to that specific right in the *Miranda* decision. They are as follows:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. p. 444

> * * *

> In order fully to apprise a person interrogated of the extent of his rights under this sytem then, it is necessary to

warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. p. 473

* * *

[I]f police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that *if he cannot afford one, a lawyer will be provided for him prior to any interrogation.* p. 474

* * *

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, *and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.* p. 479 (Italics supplied.)

Compare these statements with the language used in the warning in this case: ". . . If, you cannot afford a lawyer, one will be appointed for you, before any questioning, if you wish." The language is virtually word for word from *Miranda* and completely complies with *Miranda.* Our cautionary remarks in *Trotter* about such a warning and our statement about augmentation were a mistake and are overruled.

Affirmed.