Michael SMITH *v.* STATE of Arkansas

CR 87-123                                    757 S.W.2d 554

Supreme Court of Arkansas
Opinion delivered October 10, 1988

*Pruitt & Hodnett*, by: *Roger T. Jeremiah*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Michael Smith was convicted of seven counts of terroristic threatening in the first degree and seven counts of false imprisonment in the first degree. At trial he insisted on representing himself and a public defender was appointed to assist him. He was sentenced to 21 years for each count of terroristic threatening and 15 years for each count of false imprisonment; the sentence imposed was 242 years. Actually, the trial judge miscalculated and the sentence should have read 252 years. Eight arguments are made for reversal; all are meritless.

Smith was a truck driver for Don Youngblood Trucking Company in Alma, Arkansas. A dispute arose between Youngblood and Smith, and Smith was fired. An argument between Smith and Youngblood, which occurred over the telephone, reveals that Smith told Youngblood he was coming to the office to get his check. Upon arrival he was told that the computer was not working and the check was not ready. An employee started preparation of Smith's check by typewriter. While waiting for his check, Smith and Youngblood began arguing again. Smith became very angry, pulled a pistol and threatened to kill everyone in the building if the police arrived or if the phones were used before he received his check. There were seven employees in the building at that time in two offices. Smith moved back and forth down a short hallway to monitor everyone in the building while communicating his threats. After he received his check, he went to his apartment in Van Buren, Arkansas, where the police later arrested him and took possession of the check.

Smith first contends that under Ark. Code Ann. § 5-1-110(a)(5) (1987) his conduct was uninterrupted; therefore, at most he may only be convicted of one count of terroristic threatening and one count of false imprisonment.

Ark. Code Ann. § 5-1-110(a)(5) provides:

(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Appellant argues that this section "would prohibit prosecution for multiple counts where the conduct of the defendant is a continuing course of conduct and was uninterrupted." We have considered this argument before and decided that for this subsection to be applicable, the conduct must be *defined* as a continuing course of conduct crime. *Rhodes* v. *State*, 293 Ark. 211, 736 S.W.2d 284 (1987). As we pointed out in *Rhodes*, the statute clearly states that a defendant may not be convicted of more than one offense if the conduct is defined as a continuing course of conduct.

Neither terroristic threatening nor false imprisonment is defined as a continuing offense. Examples of such offenses are nonsupport [Ark. Code Ann. § 5-26-401 (1987)], and obstructing a highway [Ark. Code Ann. § 5-71-214 (1987)]. *See Britt* v. *State*, 261 Ark. 488, 549 S.W.2d 84 (1977); *Rhodes* v. *State, supra.* Because neither offense is defined as a continuing course of conduct, § 5-1-110(a)(5) has no application to the facts of this case. If Smith had killed seven people, it would hardly be argued that he could only be convicted of one count of murder.

Smith makes two arguments regarding the sufficiency of the evidence. First, he argues that there was insufficient evidence to support convictions of terroristic threatening of two victims, Winona Davis and Minnea Smith; and second, he alleges there was not sufficient evidence to support a conviction for false imprisonment of Minnea Smith.

In a criminal case we will affirm if there is substantial evidence to support the verdict. *Robinson* v. *State*, 291 Ark. 212, 723 S.W.2d 818 (1982). Substantial evidence is that which rises above speculation or conjecture and compels a conclusion one

way or another. *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980). We review the evidence in the light most favorable to the appellee, the state in this case. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977). We consider only testimony tending to support the guilty verdict. *Brown* v. *State*, 278 Ark. 604, 648 S.W.2d 67 (1983).

■ Regarding Smith's first attack on the sufficiency of the evidence, he says that no evidence was presented at the trial which tended to show that two of the seven persons present in the office were *actually* terrorized. Smith misunderstands the proscription of the criminal code provision on terroristic threatening. Ark. Code Ann. § 5-13-301(a)(1) (1987) provides:

> A person commits the offense of terroristic threatening in the first degree if, with the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person.

The conduct prohibited by this section is the communication of the threat with the *purpose* of terrorizing another. It is not necessary that the recipient of the threat actually be terrorized. *Richard* v. *State*, 266 Ark. App. 733, 585 S.W.2d 375 (1979). In view of this premise, it is clear that testimony of some witnesses to Smith's statements that "he'd kill everyone in the building" is sufficient to sustain his conviction on all counts of terroristic threatening. A jury could easily conclude that he meant anyone or all of the seven.

■ In Smith's second sufficiency argument, he asserts that there was no testimony from Minnea Smith that she felt restrained without consent or legal justification, that is, falsely imprisoned. The same logic applies here that applies to the first sufficiency of evidence argument. There is no requirement that the state place every victim on the witness stand to satisfy the burden to prove by substantial evidence every element of a crime. The jury could easily conclude all were falsely imprisoned.

■ Smith asks that his case be reversed and dismissed because he was not taken before a judicial officer without delay. He was arraigned seven days after his arrest. Our rules provide that a detained person shall be taken before a judicial officer without unnecessary delay. A.R.Cr.P. Rule 8.1. Failure to

comply does not dictate a dismissal of the charges. *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978); *Gerstein* v. *Pugh*, 420 U.S. 103 (1975). In *Gerstein* the United States Supreme Court said:

> [W]e adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information . . . nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction . . . .

The remedy for violation of Rule 8.1 is suppression of the evidence obtained as set forth in *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). The appellant here concedes that the *Duncan* test is not satisfied so we need not speak on the matter.

Appellant also seeks reversal based on the trial court's ruling that statements taken after his arrest were admissible. The trial court considered the evidence at a pretrial hearing. The appellant concedes that on this issue it was a "swearing match." We have repeatedly held that any conflict in witnesses' testimony is for the trial court to resolve. *Harris* v. *State*, 294 Ark. 484, 743 S.W.2d 822 (1988); *Smith* v. *State*, 292 Ark. 162, 729 S.W.2d 5 (1987). We find no abuse of discretion in the court's ruling.

Appellant makes several other general arguments which we find meritless. He contends that his convictions are in violation of the double jeopardy clause of the United States and Arkansas Constitutions. No objection was made on this basis at the trial. So we will not consider it on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). That is true even if the error is of constitutional import. *Griggs* v. *State*, 280 Ark. 339, 658 S.W.2d 371 (1983). He argues that the trial judge erred in failing to recuse when Smith raised the possibility of a class action federal lawsuit for failure to promptly arraign him and others. The trial judge has considerable discretion in matters such as this, and we will not reverse absent a clear abuse of that discretion, which the appellant has not demonstrated. *Woods* v. *State*, 278 Ark. 271, 644 S.W.2d 937 (1983).

The final argument concerns the denial of numerous *pro se* motions filed by the defendant before his trial. He argues that the denial of these motions amounts to a denial of due

process, yet he does not support his argument with any convincing authority or reasoning. Consequently, we will not consider it. *Poyner* v. *State*, 288 Ark. 402, 705 S.W.2d 882 (1986).

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE. Justice, dissenting. I think we ought to follow the law but in doing so we should use common sense and apply that degree of justice which is compatible with the law. Basically, I disagree with this outrageous sentence, which indicates a need for sentencing guidelines at the state level.

This appears to be a case where an employee becomes outraged and uncontrollable because he had been fired and his final check was not ready. His conduct is inexcusable and highly criminal. He ought to be punished but the courts should not act arbitrarily and unreasonably in response to the acts of an accused. There is no more justification for the reaction by the system than there is for the original action of the criminal.

The majority opinion relies upon Ark. Code Ann. § 5-1-110(a)(5), which is also the foundation of this dissent. The case before us is a clear example of a continuing course of uninterrupted conduct and the law does not otherwise provide that specific periods of this conduct constitute separate offenses.

*Rhodes* v. *State*, 293 Ark. 211, 736 S.W.2d 284 (1987), is cited in support of the majority. There is no comparison to be found between *Rhodes* and the present case. Rhodes was charged with offenses which were committed within a "few days" of each other. He robbed two citizens in separate robberies and a few days later had a shoot-out with officers who were trying to arrest him. He was charged with attempted murder for his resisting efforts. We properly held that there was no continuing course of conduct and each offense was a separate course of conduct. The opinion ended by stating: "He was not charged with several counts for the same continuous crime."

When the impulse is single only one charge is proper, no matter how long the action may continue. *Rowe* v. *State*, 271 Ark. 20, 607 S.W.2d 567 (1980). If the same conduct establishes more than one offense, a conviction may be had for only one. *Swaite* v.

*State*, 272 Ark. 128, 612 S.W.2d 307 (1981). There is no separation of the acts by the appellant in this case. It was all one continuous course of conduct directed at obtaining his paycheck. When he completed his goal he left. This is not as though he went to each of the seven persons and addressed them separately or if he had shot each one of them.

The statement that if he had killed all seven he could be punished for seven separate murders is scary. Of course he could be punished for separate murders. It takes separate impulses to commit multiple murders. But to assume he might have or could have killed seven people is very little stronger than locking up the first man you meet on the street because he might commit a crime. He might, but then he might not.

This sentence is unconscionable and should be reduced to a sentence appropriate for the conduct attributable to the appellant in the case before us. It was, after all, but one uninterrupted course of conduct, lasting only a matter of minutes.