Anthony HILL *v.* STATE of Arkansas

CR 90-121                           798 S.W.2d 65

Supreme Court of Arkansas

Opinion delivered October 29, 1990

[Rehearing denied December 3, 1990.*]

---

*Hays and Glaze, JJ., would grant rehearing.

*Allen & O'Hern*, by: *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

OTIS H. TURNER, Justice. The appellant, Anthony Hill, challenges his conviction for the crime of first-degree murder and the resulting sentence of life imprisonment. He asserts two points as error. First, he argues that the trial court erroneously permitted introduction of custodial statements obtained in violation of appellant's Fifth, Sixth, and Fourteenth Amendment rights. We find this contention to be without merit. Secondly, the appellant submits that the trial court erred in failing to give the proper instruction on first-degree murder. We agree with this contention, and while we affirm the finding of guilty, we reduce that finding from one of first-degree murder to second-degree murder and accordingly modify the sentence.

On December 22, 1988, the body of Bobby Dale Green was discovered on the side of the road near Sweet Home. Pulaski County Deputy Sheriff Ken Dillon picked up the appellant for questioning about the homicide. Deputy Dillon testified that he read the appellant his rights before transporting him to the Sheriff's Department. Upon arrival, Sergeant Carl Beadle again read the appellant his *Miranda* rights, and Hill signed a form waiving those rights. During questioning by Sergeant Beadle, the appellant at first denied having killed Bobby Dale Green and blamed the homicide on another person. He ultimately admitted to having killed the victim, and, after he was again advised of his rights, a tape recording of the oral statement was made. Subsequently a transcript of that statement was introduced at trial, over defense objections.

The appellant's argument that his statements given to the

Sheriff's Department were not voluntary is premised upon two assertions, neither of which can be sustained. First, he notes that, when evaluated by a private psychologist, he was found to have an intelligence quotient of between 56 and 70, to be functioning at below the level of third grade, and was classified as mildly mentally retarded. Further, he states that he had obtained only a tenth-grade education, consisting primarily of special education classes, and had low verbal skills. He also remarks on his dysfunctional family background with alcoholic father and a mentally ill brother. These circumstances, the appellant claims, place him in a position analogous to that of the appellant in *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). In that case, the supreme court reversed a capital felony murder conviction in part for a failure of the state to show an effective waiver of rights. There, the appellant had dropped out of school in the eleventh grade, read only at a third-grade level, had an IQ of 70, and was classified as mildly retarded. The difference between *Duncan* and the present case, however, consists in the absence in the earlier case of evidence in the record of a rights-waiver form having been signed and the fact that the appellant in *Duncan* had been detained for a substantial length of time. As the court observed:

> . . . Duncan was barely literate and marginally retarded. He was not given a waiver form to sign nor was he asked whether he waived his rights; he was kept incommunicado for three and a half days, and it was only at the end of that time that he gave an inculpatory statement. There was no showing of a deliberate and intentional relinquishment of his rights, or that he had a clear understanding of what those rights were.

291 Ark. at 531-532, 726 S.W.2d at 658.

Here, the appellant was read his Miranda rights, initialed a form indicating that he understood them, and signed a waiver of those rights. His contention that he was threatened with beating if he refused to confess presented a question of credibility for the trier of fact; the appellate court is not in a position to redetermine that credibility issue. *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989).

Regarding the appellant's argument that his low

intelligence quotient affects the validity of his waiver and the voluntariness of his statement, this court has held in *Burin* v. *State*, and in *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 12 (1986), that a low intelligence quotient will not, in itself, render involuntary a waiver of the privilege afforded by *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Other factors to be considered are the defendant's age, experience, education, background, and the length of detention. *Burin* v. *State*; *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985). here, the appellant was twenty years old at the time of the homicide, had completed either ten or eleven grades of mostly special education, owned a gun, could drive an automobile, had sold drugs regularly, and was a previously convicted felon who had more than a passing acquaintance with the legal process. Further, Dr. Jane Bunten, who tested the appellant's intelligence at the State Hospital, testified that he rather suspiciously missed every answer on one test, although he would look first at the correct answer, and then "scan the others and pick a different picture each time." The psychologist concluded that the appellant was purposefully aiming for a lower score.

In *Smith* v. *State*, 292 Ark. 162, 729 S.W.2d 5 (1987), this court upheld the trial court's finding that there was sufficient evidence that a defendant understood his rights and had made a valid waiver, despite the fact that the defendant was found to have an IQ of 62, to be functioning three levels below the average expected for his age, and had obtained only a third-grade education (although he had completed ten grades). Again, the matter was considered to be one of credibility. Even a fourteen-year-old defendant, whose intelligence quotient was found to be in the "low dull normal range," was held to have made a voluntary confession to the murder of her father in *Little* v. *State*, 261 Ark. 859, 554 S.W.2d 312 (1977). The appellant's argument for reversal on this point is not persuasive.

The appellant's second point deals with the court's jury instruction relating to first-degree murder, given over the appellant's timely objection to the form of the instruction. The appellant's argument is meritorious and requires us to set aside the verdict of first degree murder.

The appellant was charged with violations of Ark. Code

Ann. § 5-10-101 (Supp. 1989) — capital felony murder; Ark. Code Ann. § 5-12-102 (Supp. 1989) — robbery; and Ark. Code Ann. § 5-36-103 (Supp. 1989) — theft of property. Following a trial by jury, the appellant was found guilty of first-degree murder, was acquitted of the charge of robbery, and was found guilty of misdemeanor theft of property.

Ark. Code Ann. § 5-10-101(a)(1) and (c) (Supp. 1989) provide in part:

> (a) A person commits capital murder if:
>
> (1) Acting alone or with one or more other persons, he commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . .
>
> (c) Capital murder is punishable by death or life imprisonment without parole . . . .

Under the crime of capital felony murder is the lesser included offense of felony murder in the first degree. Ark. Code Ann. § 5-10-102 (Supp. 1989) provides in pertinent part as follows:

> (a) A person commits murder in the first degree if:
>
> (1) Acting alone or with one (1) or more persons, he commits or attempts to commit a felony, and in the course of and in furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or
>
> (2) With a purpose of causing the death of another person, he causes the death of another person; . . .
>
> (c) Murder in the first degree is a Class Y felony.

Also within the capital murder charge is the lesser included offense of second-degree murder. Ark. Code Ann. § 5-10-103 (Supp. 1989) provides:

> (a) A person commits murder in the second degree if:

(1) He knowingly causes the death of another person under circumstances manifesting extreme and indifference to the value of human life; or

(2) With the purpose of causing serious physical injury to another person, he causes the death of any person.

(b) Murder in the second degree is a Class B felony.

In this case, the appellant was charged with capital felony murder — a killing in the course of the commission of the offense of robbery — one of the enumerated felonies under the provisions of Ark. Code Ann. § 5-10-101. In the information, he was *also* charged with the *separate* offense of robbery.

Prior to submission of the case to the jury, the appellant tendered a proper instruction on felony murder in the first degree as a lesser included offense of capital felony murder, and the proffered instruction tracked the provisions of Ark. Code Ann. § 5-10-102(a)(1). The trial court refused the appellant's tender, apparently grounding its refusal upon the fact that the first-degree felony murder instruction would require the same elements of proof and would thus be a repetition of the capital felony murder instruction, with the only difference being the degree of punishment.

Having refused the appellant's proffered jury charge on first-degree felony murder, the court gave instead an instruction permitting the jury to convict the appellant of first-degree murder upon a finding of "premeditation and deliberation." This instruction followed Ark. Code Ann. § 5-10-102(a)(2).

The trial court also properly instructed the jury, without objection, on the offense of robbery. However, no instruction was requested or given on attempted robbery.

Having been so instructed, the jury returned an acquittal on the robbery charge and a verdict of guilty, not on the capital felony murder charge, but of murder in the first degree after premeditation and deliberation — an offense not included in the information charging the appellant with the homicide.

Though Ark. Code Ann. § 5-10-101 and § 5-10-102(1) admittedly overlap, this circumstance does not render either statute constitutionally suspect in its application. *Penn* v.

*State*, 284 Ark. 234, 681 S.W.2d 304 (1984); *Wilson* v. *State*, 271 Ark. 682, 611 S.W.2d 739 (1981). Indeed, we have said that when capital felony murder is charged under Ark. Code Ann. § 5-10-101, first-degree murder is a "lesser included offense" because the same evidence used to prove the former of necessity proves the latter. Therefore, an instruction on first-degree murder is required. *Rhodes* v. *State*, 290 Ark. 60, 716 S.W.2d 758 (1986). The proper instruction in this instance would have been the first-degree felony murder instruction as authorized under the provisions of Ark. Code Ann. § 5-10-102(1) — the very form of instruction tendered by the appellant and refused by the court.

■ Having found that the proper instruction was refused, we must now determine whether the omission was prejudicial and violative of the appellant's due process rights. *Evans* v. *State*, 287 Ark. 136, 697 S.W.2d 879 (1985).

The jury acquitted the appellant on the robbery charge. This finding removed the underlying felony from the capital murder charge set forth in the information, which contained no language addressing a question of premeditation and deliberation. The appellant was thus convicted of a crime with which he had never been charged. Such a result clearly constitutes a violation of the appellant's due process rights.

■ Under the language of the information, considered in conjunction with the verdict of the jury, the appellant could be convicted of no crime greater than second-degree murder. We must therefore reduce the conviction of the appellant to that of murder in the second degree, on which a proper instruction was given without objection. The appellant received the maximum sentence for first-degree felony murder — life imprisonment — and we therefore reduce that sentence to the maximum for second-degree murder — twenty years. Ark. Code Ann. § 5-4-401(a)(3) (1987); *Midgett* v. *State*, 292 Ark. 278, 729 S.W.2d 410 (1987).

Affirmed as modified.

DUDLEY, J., concurs.

GLAZE, J., concurs in part and dissents in part.

ROBERT H. DUDLEY, Justice, concurring. I write separately

to concur in the disposition of this case.

The appellant was charged with capital felony murder. Robbery was specified as the underlying felony. Under such a charge the appellant could have been convicted of capital felony murder, first degree murder, second degree murder, robbery, or attempted robbery. Ark. Code Ann. § 5-1-110(b)(1) (1987). Interestingly enough, the State filed a separate count of robbery for the same act. The second count was surplusage since, under the capital murder charge, the appellant could have been convicted of both murder and robbery, or either of them, but sentenced for only one of the convictions. Ark. Code Ann. § 5-1-110(a) and (b) (1987); *see also* 1983 Supplementary Commentary, sub-section styled *Felony Murder and Underlying Felony*, and *Wilson* v. *State*, 277 Ark. 219, 640 S.W.2d 440 (1983). The jury found appellant not guilty of capital murder and not guilty of the separate count of robbery. The jury did find appellant guilty of pre-meditated murder, a crime not charged. As set out in the majority opinion, the trial court erred in refusing to instruct on felony murder. Accordingly, we must reverse. The real issue is do we remand or do we reduce the judgment to second degree murder? The resolution of that issue turns on whether the information can be amended.

The information in this particular case cannot be amended to charge another underlying felony without violating the prohibition against double jeopardy because appellant was acquitted of the separate count of robbery. A second jeopardy for the same offense is prohibited. 21 Am. Jur. 2d § 266. I cannot think of any other underlying felony which is essentially independent and distinct with which appellant can be charged. Further, none is suggested by the State. Thus, remanding and allowing the State to amend to a different underlying felony would violate the double jeopardy prohibition. Accordingly, I join in reducing the judgment of conviction to second degree murder.

TOM GLAZE, Justice, concurring in part and dissenting in part. Appellant argues that since the jury acquitted appellant of robbery, the underlying felony to the capital murder charge, the jury was certain to have returned an acquittal of the lesser included offense of first degree felony murder. Such a conclusion is based upon sheer speculation.

First, the state based the capital murder charge on the enumerated underlying felony of robbery. Under the first degree felony murder charge, the state could have shown appellant killed Bobby Green during the course and furtherance of committing or attempting to commit *any* felony. In fact, appellant and Bobby Green were in the midst of a felony drug deal when appellant murdered Green. Thus, the jury may well have decided appellant was guilty of first degree felony murder even though it chose to acquit appellant on the greater crime of capital felony murder, which would have carried a penalty of life without parole.

In sum, although appellant was entitled to the first degree felony murder instruction, he, at the most, is entitled only to the reversal and remand of this case for a new trial. It is the state's option and decision, not this court's, as to how to proceed and what evidence to present upon the remand of this matter. By the same token, appellant is entitled to the felony murder instruction he requested, and the jury should have the opportunity to decide appellant's culpability under that lesser included offense. Under these circumstances, appellant cannot claim that double jeopardy attached, especially when he asks for the first degree murder offense instruction he was refused. In other words, he should not be able to claim error for the trial court's failing to give him a first degree felony murder instruction and later assert double jeopardy on that basis. This court is wrong in reducing the appellant's life sentence to twenty years, which is the maximum term for second degree homicide.